## IKE GODWIN v. THE STATE.

### No. 1538.   Decided June 8, 1898.

**1.   Murder—Evidence.**

On a trial for murder, where there was some question as to the number of shots and by whom fired at the time of the homicide, it was admissible to prove that a pistol which was picked up near the hand of the deceased was unloaded save only an empty cartridge shell.

**2.   Same.**

On a trial for murder, where there was a question as to the number of shots fired, and as to whether deceased fired at all during the conflict, and the evidence showed that before the fatal difficulty deceased had fired the pistol which he had with him at a bottle; and that after the shooting this pistol was found lying near his hand and was unloaded save a single empty cartridge shell; Held, it was competent for the State to prove that on the night before the homicide the witness saw this pistol in the room of deceased lying on a table, and that he examined it and saw but one cartridge in it. This evidence tended to show that deceased's pistol was empty dur ing the rencounter; that defendant, who had it twice in his hand just before the killing, knew that it was empty; and showed that deceased fired none of the shots fired during the shooting.

**3.   Same—Declarations and Admissions of Defendant.**

The statement made to a witness by defendant, subsequent to the homicide, "I have killed me a man, sure as hell, and killed him over a game of cards," was clearly admissible in evidence.

**4.   Murder in the Second Degree—Charge on Express Malice.**

On a trial for murder in the second degree, while it would be better for the court to tell the jury that defendant was only on trial for that degree of murder, and that he charged upon express malice merely for the purpose of better instructing them upon murder in the second degree, still an omission to do so is not error, where the purpose for which such charge was given is understood by the jury.

**5.   Same—Self-Defense—Appearance of Danger.**

On a trial for murder, where the testimony on the part of defendant shows an actual attack and demonstration by deceased with a pistol, and a discharge of the pistol at defendant; held, this would constitute real and not apparent danger, and the court did not err in omitting to charge upon defendant's right of self-defense based upon deceased's preparing to attack him.

**6.   Charge of Court—Practice on Appeal.**

Under the Act of the Twenty-fifth Legislature, amending article 723, Code of Criminal Procedure, an erroneous charge of court will not constitute reversible error unless it was calculated to injure the rights of the defendant.

**7.   Same—Provoking Difficulty by Deceased.**

See facts stated in the opinion upon which it is held that a radically erroneous charge by the court upon provoking the difficulty by deceased was not calculated to injure the rights of defendant, though the same was not called for by the evidence in the case.

**8.   Same—Self-Defense—Charge.**

See facts stated in the opinion, upon which it is Held, that the court would not have erred in omitting or refusing altogether to charge upon self-defense.

APPEAL from the District Court of Callahan. Tried below before Hon. T. H. CONNER.

Appeal from a conviction for murder in the second degree; penalty, twenty years imprisonment in the penitentiary.

This is a second appeal in this case. See Godwin v. State, 38 Texas Criminal Reports, 466. The facts can readily be gathered from the two opinions.

*J. E. Thomas* and *John Bowyer,* for appellant.

*Mann Trice,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of twenty years, and prosecutes this appeal.

This case was before us at a former term of this court, and was reversed because of the improper admission of threats. See Godwin v. State, 38 Texas Crim. Rep., 466. The facts in this case, aside from the threats, which were not introduced in evidence here, are substantially the same as on the former trial, and we refer to that case for the statement of the facts. Appellant, by his bill of exceptions numbered 1, calls in question the action of the court in admitting the testimony of John Blakley for the State, to the effect that he picked up a pistol near the hand of the deceased at the place of the homicide, and there was but one empty cartridge in the pistol, and that the same was not loaded. Appellant objected to this testimony on the ground that it formed no part of the transaction, and shed no light on the same, and was immaterial to the issue under investigation, and there was no proof that defendant had knowledge that the pistol was unloaded. In our opinion, this testimony was admissible for several purposes. There was some controversy as to how many shots were fired at the place of the homicide, and who fired said shots; and the condition of this pistol when it was found by the deceased was a physical fact which served to shed light on that issue. Appellant also objected to the proof by Spike Blakley to the effect that he was at the residence of the deceased's father, with whom the deceased lived, on the night before the homicide, and was with deceased in his room, and he there saw deceased's pistol lying on the table, and that he examined said pistol, or looked at it, and saw that it then had but one cartridge in it; to which evidence appellant objected on the ground that same was remote, and formed no part of the transaction, and was inadmissible for any purpose whatsoever. The court overruled the objections, and admitted the testimony, and appends the following explanation to the bill, to wit: "It had already appeared in proof that the pistol in question was the one in hands of deceased at the time of the shooting; that a pistol (inferentially the same) was picked up near the body, with but one shell therein, and it exploded; that no other shells were at the body; that a short time before the killing the deceased had fired a shot at the bottle; that the pistol lay on the blanket whereon the parties played the game, almost under the hand of defendant, several hours, and that defendant had the pistol in his hands at least twice during the game; and witness testified that it could be plainly seen whether a pistol

of the kind had one or more cartridges or loads in it. And the fact that the witness saw the pistol the evening before, and discovered that it had but one cartridge therein, was admitted by the court as a circumstance (the weight of which is to be determined by the jury) tending to show that if, in fact, the pistol had but one load therein at the time of the shooting, and it discharged before the killing, as contended by the State, that defendant had opportunity to so discover." As stated before, there is some controversy as to how many shots were fired at or about the time the homicide was committed. The homicide was shown to have been committed in the woods, where the parties had assembled for a game of cards. There were only four persons present, to wit, defendant and deceased, Irion, and Merchant. Irion was introduced by the State and Merchant by the defendant. Both witnesses agree in stating that deceased, while the game was being played, some half hour before the homicide, fired one shot at a bottle in his rear. Irion testified that during the difficulty three shots were fired in rapid succession by the defendant at the deceased; and he states where they took effect—one struck deceased in the breast, one in the stomach, and the last one in his forehead, which was shot by defendant after the deceased had fallen. Irion further testified that he immediately ran home, which was about a quarter of a mile from the scene of the homicide; and about the time he got home he heard another shot fired at the place of the homicide, making five shots in all. Merchant testified that deceased fired the first shot, and that defendant fired the three succeeding shots all in rapid succession; and locates them in the body of the deceased, as did Irion. He also says that there were five shots fired, and accounted for them as stated. Merchant stated that he remained at the scene of the homicide until the defendant left. Simpson, who lived about a half or three-fourths of a mile from the scene of the homicide, testified that he heard five shots in all, which appeared to him to come from the place of the homicide; that, after he heard the first shot fired, there was an interval of about thirty minutes; then there were three shots in rapid succession; then in three or four minutes he heard the fifth shot. Tatum, another witness, stated that he lived about one-half mile from the place of the shooting, and that he heard three shots fired in quick succession; that they were pistol shots. J. G. Blakley located four wounds in deceased's body. Besides the three testified to by Irion and Merchant, he located another on the left arm, between the elbow and shoulder, on the upper side of the arm; and that said shot, from its position, could not have been inflicted by the same bullets that produced any of the other wounds. So that it became a material issue to ascertain by all legitimate testimony how many shots were actually fired, and by whom fired. If deceased's pistol contained but one cartridge, and he fired that cartridge at the bottle, then he could not have fired either of the three shots testified to by Irion during the conflict, while he was present, or either of the four shots as testified to by Merchant. It became a material question, therefore, to

ascertain whether the pistol used by deceased contained more than one cartridge at the time of the homicide. There was testimony showing that the pistol in question found by deceased's body was the same pistol that had been staked in the game by Irion, which had been furnished him by Merchant, and which was also shown to be the pistol of the deceased, the one he had at his home the night before. The circumstances all tend strongly to show this fact. If it was the same pistol that the witness Blakley saw in deceased's room the night before, that pistol, according to his testimony, had but one cartridge in it. The fact that the pistol staked on the game was fired before the homicide, at a bottle, by the deceased, and that the same pistol was handed by appellant to deceased just before the shooting, and that a pistol was immediately after the homicide found by the body of the deceased with only one shell in it, discharged, would tend to show that deceased did not fire a shot during the difficulty, and so dispute the testimony of Merchant. It is insisted that there is no testimony identifying the pistol used in the game, and found near the dead body of the deceased immediately after the homicide, as the same pistol seen by Blakley in deceased's possession the night before. The testimony shows that deceased brought the pistol there, which was entered in the game as a stake, and the circumstances tend strongly to show that it was the same identical pistol. We think that the testimony of the witness Blakley was admissible on the grounds above stated. This evidence would be a circumstance tending to show that deceased's pistol was empty at the time of the rencounter with the defendant, and, in connection with the fact that appellant was shown to have had said pistol in his possession twice during the game, and after it was shown to have been shot by deceased at the bottle, would also tend to show that he knew that it was not loaded when he and deceased had the conflict. It would tend to show that deceased fired neither of the four shots at the place of the homicide, but that they were all fired by the defendant. The position taken by counsel, that evidence that said pistol had only one barrel loaded the night before was proof made as to its condition in the absence of the appellant, and was res inter alios acta, and could not affect appellant, and was, therefore, inadmissible, is not maintainable. Whether he knew the fact or not that the pistol was not loaded at the time of the homicide, it was admissible as testimony in support of the State's witnesses to show how many shots were fired during the difficulty, and by whom fired. The testimony of Fritz Zirriax as to what appellant told him subsequent to the homicide, we think was clearly admissible. It was an admission to the effect that he had killed deceased. His language was, "I have killed me a man, sure as hell; and killed him over a game of cards."

Appellant also, in motion for a new trial and in bills of exception, excepts to the charge of the court. He excepts to that portion of the charge defining express malice. Evidently the court gave this charge for the purpose of defining to the jury implied malice,—instructing them

upon that subject. We think it would have been better had the learned judge who tried the case stated distinctly to the jury that appellant was only on trial for murder in the second degree, and that he gave a charge on murder in the first degree upon express malice merely for the purpose of defining to them, and instructing them upon the subject of, murder in the second degree. But we do not believe that the omission to do this served to confuse the jury, but that they understood the purpose for which said charge was given.

Appellant also objected to the charge on murder in the second degree, because the court therein, in defining said offense, stated to the jury in general terms the doctrine of self-defense. Appellant's contention is that it limited the right of the defendant to an actual attack, and failed to instruct them as to the right of the defendant if deceased was preparing to attack him. The court gave a charge on the appearance of danger, which we think sufficiently protected appellant in his rights. But in fact there was no appearance of danger here, unless said appearance is predicated on an unloaded pistol. The testimony on the part of the defendant, if it is to be credited, shows an actual attack, and a demonstration with a pistol; and further shows that deceased discharged his pistol at him. There was no occasion here, from appellant's standpoint, to give a charge on a preparation to attack him. We do not think the charge on manslaughter was called for by any testimony in this case, but as given we see no objection to it.

Appellant contends that the court committed an error in giving a charge on provoking the difficulty by deceased. We are inclined to agree with appellant that such a charge was not called for by the eivdence in this case, and we are further of the opinion that the charge as given was radically wrong. See Cartwright v. State, 14 Texas Crim. App., 486; White v. State, 23 Texas Crim. App., 154; Morgan v. State, 34 Texas Crim. Rep., 222. But the question here is, was the error of a material character, for under the act of the Twenty-fifth Legislature a charge is not only required to be erroneous, but must be calculated to injure the rights of the defendant. See Laws 25th Leg., p. 17. From the record there is no question that appellant, when the altercation occurred over the game of cards, invited deceased to engage with him in mortal combat,—invited him from the game of cards, where they were disputing, to one side, stating that he wanted to talk with him. The deceased told him he would go if he would give him a fair break. He told him he would, and defendant then had both pistols, his own and that of the deceased. After they had started, deceased asked for his pistol, and defendant gave it to him. After they had retired about thirty or forty feet from the blanket where they were playing cards, they confronted each other, engaged in a wordy altercation, each having his pistol in his hand. The witnesses say that deceased made the first demonstration; that is, he raised his pistol from his hip, and cocked it. Defendant's witness, however, stated that all the time while deceased was cocking his pistol de-

fendant had his pistol in his hand, presented and pointed at deceased's stomach. So that the iteration by the witnesses that deceased made the first demonstration is mere twaddle, and a play upon words. When deceased made that demonstration, appellant had already invited him to mortal combat, and he then had his pistol drawn and presented at a vital point of his body. There is strong evidence to show that during all this time appellant knew that deceased's pistol was not loaded. But, concede that he did not know this fact, still there is no pretense of self-defense in this case. If the court had charged on mutual combat, it would have been entirely correct. But does it follow, therefore, that a charge on provoking the difficulty was calculated to impair the rights of appellant? We think not. An invitation to engage in mortal combat and provoking a difficulty may not be one and the same thing, but in neither does the right of self-defense exist; and there would have been no error had the court refused to charge on self-defense altogether. There being no errors in the record, the judgment is affirmed.

*Affirmed.*

HURT, Presiding Judge, absent.

[NOTE.—Appellant's motion for rehearing was overruled without a written opinion.—Reporter.]