## Will Johnson v. The State.

### No. 1886.    Decided June 12, 1912.

### Rehearing denied June 28, 1912.

**1.—Robbery—Indictment—Motion in Arrest of Judgment.**

Where, in a prosecution of robbery, the indictment followed approved precedent, there was no error in overruling a motion in arrest of judgment.

**2.—Same—Charge of Court—Firearms—Violence—Article 723.**

Where, upon trial of robbery, there was no question that the defendant used violence and exhibited a firearm in committing the alleged robbery, there was no error in that the court's charge did not specifically state that the robbery must have been accomplished by the use of violence and firearms, as set forth in article 856, Penal Code; as it was not such error as called for a reversal of the case, under article 723, Code Criminal Procedure. Following

Goodwin v. State, 39 Texas Crim. Rep., 408, and other cases. Davidson, Presiding Judge, dissenting.

Appeal from the District Court of McLennan. Tried below before the Hon. Richard I. Munroe.

Appeal from a conviction of robbery with firearms; penalty, twenty-five years imprisonment in the penitentiary.

The opinion states the case.

*Willis & Atkinson,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of robbery, his punishment being assessed at twenty-five years confinement in the penitentiary.

In view of what has been said by my brethren in the majority opinion in the case of Collin Robinson v. State, No. 1888, this day decided, as well as the companion case of Robinson v. State, also this day decided, and on the authority of that opinion the judgment herein will be affirmed.

*Affirmed.*

ON REHEARING.

June 28, 1912.

HARPER, JUDGE.—In the original opinion only the sufficiency of the indictment was discussed, and appellant has filed a motion for rehearing calling our attention to the fact that there was a bill of exceptions reserved to one paragraph of the court's charge. The paragraph excepted to reads as follows:

"Now, if you believe from the evidence beyond a reasonable doubt that the defendant either alone or in connection with another or others, on or about the 14th day of July, 1911, in the county of McLennan, and State of Texas, as alleged in the indictment, did unlawfully and wilfully by using and exhibiting a firearm and that the same was a pistol, did frandulently take from the person and possession and without the consent and against the will of the said J. A. Hunter the money described in the indictment, to wit: thirty-one and 25/100 dollars (thirty-one dollars and twenty-five cents), and that the same was lawful money of the United States of America, and that the same was of the value of thirty-one dollars and twenty-five cents, or any part of said money, with the fraudulent intent to deprive the said J. A. Hunter of the value of the same and with the intent to appropriate the same to the use and benefit of him, the said defendant, and you further find from the evidence, beyond a reasonable doubt, that he used or exhibited a firearm and that the same was a pistol in the commission of the offense, then you will find

him guilty as charged, and assess his punishment at death, or by confinement in the penitentiary for any term not less than five years."

The exception reserved was: "that the same did not charge the jury upon the law in that the using and exhibiting of a firearm is insufficient to constitute the offense of robbery unless the same be accompanied by assault or violence or putting in fear of life or bodily injury as set forth in article 856 of the Penal Code of Texas."

While the offense of robbery can not be committed except by one of the methods named, and it may be that this paragraph of the charge, critically read, would be subject to the criticism that it does not specifically state that the robbery must have been accomplished by the use of violence and by the use of firearms, yet under the decisions of this court should such error require a reversal of the case? In the case of Wright v. State, 40 Texas Crim. Rep., 45, this court held, speaking through Judge Davidson, that the charge in that case was erroneous. The charge authorized the jury to convict the defendant if the property was taken in pursuance of a common design in which the efforts of all united and concurred. The court says the charge was erroneous, adding: "It takes something more than the mere concurrence in the minds of the parties in pursuance of a previously formed design to commit the act of theft to constitute them principals. The statute requires either their presence and participancy, or, if the parties were not actually present, then those not actually present must be doing some act in furtherance of the common design, or they must be engaged in procuring aid or arms or means of some kind to assist in the commission of the offense while the others are executing the unlawful act, or they must be endeavoring at the time of the commission of the offense to secure the safety or concealment of the offenders, or they must employ a child or other person, who can not be punished, to commit the offense," etc. However, it was held that as the evidence showed the guilt of the appellants, and that they were present at the time of the commission of the offense, it was not such error as called for a reversal of the case under article 723 of the Code of Criminal Procedure. In this case the evidence shows beyond the peradventure of a doubt the guilt of appellant, and that violence was used in the perpetration of the offense, and that firearms were also used. In Goodwin v. State, 39 Texas Crim. Rep., 404, it was held that although the charge in one paragraph was "radically wrong" and although it was excepted to at the proper time, yet *under the evidence* in the case it was not such error as called for or authorized a reversal of the case. If in this case the evidence raised any question that violence was used in the commission of the offense, the alleged error might be hurtful, but as the evidence unequivocally shows that fact, under these decisions and article 723 of the Code of Criminal Procedure, we do not feel authorized to reverse the case. See also Lucas v. State, 39 Texas Crim. Rep., 48; Areola v. State, 40 Texas Crim. Rep., 51. Numerous other cases might be cited since

the adoption of that provision of our Code of Criminal Procedure, but we deem it unnecessary. However, we would call attention to another rule of law that a case will not be reversed because of an error in the charge that could not have affected the result. In the case of Pannell v. State, 54 Texas Crim. Rep., 498, Judge Davidson, speaking for the court, holds: "It may also be stated as a general rule that all errors in the charge pertaining to the offense of which appellant is convicted, also pass out if the minimum punishment is assessed, if the facts conclusively show him guilty of that particular offense." In this case not only do the facts show him conclusively guilty of the offense, but he made a confession admitting his guilt, and the minimum punishment was assessed. See also Baker v. State, 56 Texas Crim. Rep., 16. If under the evidence there was any question of appellant's guilt, or the charge as given could have or would have induced a verdict of guilty that might not have been rendered, but for such charge, we would view the matter differently. But we will quote the evidence.

J. A. Hunter testified: "Along in July this past summer I had some trouble one night coming home with reference to being held up. I was robbed on North Ninth Street. On this night I was coming down North Ninth Street. I was going home. I had been out on North Ninth Street to see a lady friend. Just as I got to Jefferson Street I noticed three fellows, but I never took any notice of who they were. Just as I got in front of the new high school building on North Ninth Street I was held up and robbed. That was about five or ten minutes before 10 o'clock—just about 10 o'clock. That was in July of this year. That happened in McLennan County and the State of Texas.

"Just before I got to this building one of these parties asked me, 'Cap, have you got a match?' I said, 'I think I have.' I reached in my pocket and got a couple of matches out and handed them to him. I remarked, 'It looks like we are going to have some rain.' They made some rejoinder like it was. So I walked on, and then they crowded right up behind me, and I thought they wanted to pass, and so I gave them a little bit of the path. So one of them says, 'Throw up your hands.' I heard it and understood what he said, but I did not pay any attention to it. I kept walking, and he made the remark again to throw up my hands. I stepped back and turned around and faced them, and said, 'What are you boys trying to give me, any how?' Then he threw the gun against my temple and said for me to throw up my hands again. The one that threw the gun on me was this negro over there. That is positively the negro that threw the gun in my face. When he did that I raised my hands up. This negro that had the gun was right in front of me. The other two negroes went through my pockets, and this one held the gun. It was dark that night. There was a moon, but it was cloudy. I could not tell who the other two were, only from their forms. I could see

this negro here plainly. He had the gun right here, and I was look-ing down at him this way. The negro on the left got my pocketbook out of my left hip pocket, and the one on my right took my watch. He took the watch and held it up like that, and says, 'That is a damned good watch.' The other one said, 'Put it back; it will get us in trouble.' So he put it down in my pants pocket, instead of putting it in my watch pocket, and after he got the money he said, 'Hike.' I did not move right then, and then he said, 'Damn you, hit the road,' and when he said that he shoved the gun in my back as I walked along and pushed me a little bit. When we got on Columbus Street the two stepped back, and this fellow followed me further than the other two, and then told me, 'Now, if you look back, damn you, I will shoot you.' So one of the other says, 'Let's blow,' and when he said that I could hear them, only I did not look back. When they turned I made a dash across the street, and went down and holloed up to Judge Walker that I had been robbed and for·him to phone in to the police. That was Justice of the Peace Walker.

"I was coming towards town. That was on North Ninth Street that I was held up. The first thing I heard these negroes say, one of them asked me if I had a match. I could not swear which one asked me that. One of them asked me if I had a match. I said, 'Yes, I think I have.' The next they said then was, 'Throw up your hands.' Nothing was said about striking a match. I could not tell what they did with the match. I never did stop. One of them asked me, 'Cap, have you got a match?' I replied that I thought I had. I had an umbrella on my arm, and had hold of the end that way, and I just swung my hand down and reached in my left-hand pocket and got a couple of matches, and kept walking. I did not even look back. One of them took the match. I do not know which one it was. I made the remark at the time that it looked like we were going to have some rain, and I believe he made some similar remark in reply. I could not say what they said. I do not remember what they said. Just about that time this negro says, 'Throw up your hands.' He was about two feet from me. He had a pistol. I saw it. It looked like a 45-pistol. That is the gun. The gun did not necessarily look bigger then than it does now. I did not believe the boys would shoot me. He put the gun right against my head. That negro there is the one. I am positive that it was this negro. When he said for me to throw up my hands he said, 'Damn you, if you holloa, I will shoot your head off.' The one on my right went in my right pants pocket and the one on my left in my left pants pocket. They did not say anything when they were going through my pockets. This negro that took my watch, he says, 'He has got a watch.' This other negro says, 'Put it back; it will get us in trouble.' He says, 'It's a damned good watch.' The other says, 'Put it back; we don't want it.'

"They also got my keys and knife out of my pocket. They did not get anything else.

"They got $31.25 in money. And I had some papers in there, but they were not valuable. I had a poll tax receipt. I do not think he voted on the poll tax receipt. They got $31.25 in money. That was good money. It was worth one hundred cents on the dollar. It was worth $31.25 to me. There were three ten-dollar bills, a dollar in silver and three nickels. They did not give any of the money back to me. One of the other negroes took the money out of the purse while this negro held the gun on me. He took the purse and all. He did not even leave the purse."

The confession of defendant was introduced and is as follows:

"On Friday night, about 9:30 o'clock, me and A. J. Clark and Collin Robinson left the corner at Puss Hannah's and walked around some. I do not know where all we went, because I do not know the streets. We met a man on 9th and Columbus by the big building, and I asked him for a match and he gave me one, and then I asked him for a dollar to strike it on, and he said that he did not have any, and I threw the gun in his face and told him to hold up his hands, and he did so, and Collin and A. J. went through his pockets, but did not get anything; and we went on to 5th St. and met a man, and Collin held the pistol on him, and me and A. J. searched him. I got a watch and a purse and some keys, and A. J. got the pistol. There was a Chinese piece of money with a square hole in it, a quarter and some paper in the purse. I spent the quarter. I threw the paper down. We throwed the Chinese money away. I had the watch and purse and keys when I was arrested. There was a plain silver looking fob, with a leather on it, on the watch. I have that now.

(Signed) Willie Johnson."

No testimony was introduced in behalf of defendant showing his presence at another or different place, or any other fact that would create any doubt as to his guilt. He relied on his plea of not guilty, which he had a right to do, and demanded that the State prove his guilt beyond a reasonable doubt.

As before stated, if the proof did not measure up to the full requirements of every allegation contained in the indictment, or if the charge as written and given could have had any tendency to cause the jury to render a verdict that probably would not otherwise have been rendered, there might be ground for complaint. The only complaint is that it does not pertinently and fully charge on and define violence, and this could and did not injure him.

The motion for rehearing is overruled.

*Overruled.*

DAVIDSON, PRESIDING JUDGE.—I can not agree to this opinion,