ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* WALKER.

Opinion delivered January 31, 1910.

1. RAILROADS—FAILURE TO KEEP LOOKOUT.—Where plaintiff became entangled in wire attached to a spike at a railroad crossing, and was

injured by a passing train, evidence tending to prove that if the engineer had been keeping a lookout he could have stopped the train in time to avoid the injury will sustain a finding of negligence on part of the railroad company. (Page 460.)

2.   Appeal and error—Harmless errors.—Appellate courts will not reverse cases for matters of form in instructions which were not prejudicial, and which could have been corrected in the trial court if its attention had been directed to the matter. (Page 461.)

Appeal from Hempstead Circuit Court; *Jacob M. Carter,* Judge; affirmed.

*Kinsworthy & Rhoton* and *James H. Stevenson,* for appellant.

1. Under appellee's own statement there is no liability on the part of appellant for the injury. It is clear, from uncontradicted testimony, that there was nothing on the track, or apparently in danger from the train, for the engineer to see; and when the train came to a place 100 feet from the crossing from which the engineer could, and for the first time did, see that there was something *beside* the track, it was then impossible to have stopped the train before reaching the object. The "lookout statute," Kirby's Dig. § 6607, merely imposes the duty to keep a constant lookout "for persons and property *upon the track.*" As to a person not on, but beside, the track, the extent of the railway company's duty is only to exercise ordinary and reasonable care not to injure him. 69 Ark. 130, 133; 84 Ark. 220.

2. The court's instruction to the jury on the duty to keep a constant lookout, etc., in view of the evidence that appellee was not on the track, but beside it, where, had a lookout been kept, his peril could not have been seen nor his injury prevented by any degree of care, submitted the case upon a false issue, and is abstract and misleading. 65 Ark 429; 63 Ark. 177; 84 Ark. 270, 275; 3 Elliott on Railroads, § 1095 and note.

3. Appellant's request for an instruction in effect that it was not liable if from the evidence it appeared that the injury resulted from one of the unforeseen circumstances and accidents which ordinary skill and diligence would not anticipate or provide against, should have been given. 82 Ark. 172, 173; 84 Ark. 275, 276.

4. The court's instruction on the measure of damages to "take into consideration, not only the loss of his hand, his bodily

and mental pain and suffering, his mental anguish, his maimed and deformed condition for life as may be shown by the proof," etc., clearly assumes these facts as shown by the evidence, is not hypothetical and is erroneous.

*Jobe & Carrigan, McRae & Tompkins* and *D. L. McRae,* for appellee.

1. Appellant's contention that the evidence does not sustain the verdict ignores all testimony except that of the engineer. In view of the fact that if a lookout had been kept appellee must have been seen, and that if he had been seen one second before he fell and the trainmen had tried to stop the train he would have had time to remove his hand, the jury were fully justified in finding that no lookout was kept. 33 Cyc. 961; 79 Ark. 245; 78 Ark. 520. A railroad company is required to keep a lookout for persons and property not only on the track but also in proximity thereto. 69 Ark. 130, 132; 80 Ark. 535; 78 Ark. 22, 28. The rule which holds a traveler to see what was plainly visible, while on or approaching a railroad track, applies with greater force to trainmen. 78 Ark. 524.

2. There is no error in the instructions given. As to that given on the measure of damages, it is not open to the objection urged against it, that it assumes facts to be true; but, if it does, they are facts about which there is no dispute. 72 Ark. 398; 67 Ark. 147-154. Moreover, this objection was not raised in the lower court.

Hart, J. This is an appeal by the St. Louis, Iron Mountain & Southern Railway Company from a judgment rendered against it in the Hempstead Circuit Court in favor of J. H. Walker for injuries alleged to have been sustained by him while crossing defendant's railroad track at a public street crossing in the city of Hope, Arkansas.

On the 28th day of October, 1908, the plaintiff, J. H. Walker, started to cross the defendant's track at a public crossing at Laurel Street in the city of Hope, Arkansas, between 10 and 11 o'clock at night. He first looked for trains, and, not seeing any, started to cross the track. When he went upon the track at the Laurel Street crossing, both of his feet became entangled in some wire which had become fastened to a spike about six inches on the inside of the north rail of the track. He began to try to

get loose and fell flat across the rail. While he was trying to get loose, he saw a train coming from the north. His right foot was not fastened as tightly as the left foot, and he got it loose first. The train was rapidly approaching. The plaintiff began hallooing and trying to flag the train by waving his hat. At the same time, he was surging backward and forward, trying to unloose his left foot from the wire. He finally succeeded, and he fell alongside the track with head to the north and one hand on the rail, just as the train rushed by. The engine passed over his hand and crushed it. When the train rushed by, he arose up and put his hat on. His hand began to sting, and he then saw that it had been crushed by the train. His hand was mangled so badly that amputation was considered necessary, and it was amputated just above the wrist.

The track at the place where the injury occurred was perfectly straight and nearly level up to the brick yard, which was about one-half mile distant, and which was also in the direction from which the train was approaching. The plaintiff first saw the headlight when it was between 500 and 700 yards away. The above is substantially the account of the occurrence given by the plaintiff. Other witnesses in his behalf said that the track was level and straight for some distance in the direction from which the train was approaching. That the train was about 50 minutes late, and was running unusually fast.

On behalf of the defendant, the engineer testified that the engine was equipped with an electric headlight, and that he was keeping a lookout when he approached the Laurel Street crossing. That he blew his road crossing signal and the station signal. That he was making only twenty miles per hour, and was drifting when he passed the Laurel Street crossing, and that going at that rate, he could have stopped the train within 300 feet. That he could distinguish a man upright on the track 500 or 600 feet away; but that he could not see one lying down until within 100 feet. That when he first saw the plaintiff he was about 100 feet away. That he was on the side of the track and out of danger of the passing train. That he could not even then tell whether he was a man, some animal, or an inanimate object.

The chief contention of counsel for defendant is that the evidence does not support the verdict, and that there was no

question of fact to be submitted to the jury. We are not of that opinion. The engineer admitted that he could see five hundred yards ahead of the engine, but says that he could not see an object on the track at that distance. He admits, however, that he could distinguish a man standing upright at 500 or 600 feet, and at the rate he was running he could have stopped his train at 300 feet. He claims that he did not see plaintiff until he was within 100 feet of him, and that he was then lying beside the track. Plaintiff testifies that he was surging backward and forward trying to extricate his foot, and at the same time was hallooing and trying to flag the train with his hat. His effort was accompanied with sufficient exertion to cause him to fall when his foot was loose from the wire, and he hit the ground just as the train rushed by. It is evident from his testimony that, while trying to get loose, his body was swaying back and forth over the rail. The engineer said that he was keeping a lookout, and could have distinguished a man in an upright position 500 or 600 feet distant, and could have stopped his train within 300 feet. While he said that he could not have seen a man lying down until within 100 feet of him, there was an intermediate point where he could have seen a man, in a partially upright position, who was violently surging back and forth over the rail and frantically waving his hat; and it was a question for the jury to say whether this point was a sufficient distance within which, under the facts and circumstances adduced in evidence, the engineer, had he been keeping a lookout, could have stopped the train or have checked its speed in time to have avoided the injury. The jury found that issue against the defendant, and its verdict is final.

Counsel for defendants also contend that the court erred in its instruction to the jury as to the measure of damages. They say, "the vice of this instruction is that it assumes facts, and is not hypothetical." We do not think the instruction open to that objection. The most that can be said of it is that the form of it might have been couched in clearer terms; but this defect could have been cured by a specific objection, and none was made. Appellate courts should not reverse cases for mere matters of form in instructions, which manifestly were not prejudicial, and which could have been corrected in the trial court, had the court's attention been directed to the matter, of which complaint is here made for the first time.

Counsel for defendant also insist that certain of the instructions of the court in regard to the duty of defendant in keeping a lookout for travelers at public crossings should not have been given; but they only object to them because they say they are abstract. If we are correct in holding that there was evidence to support the verdict, our reasoning in that behalf is a sufficient answer to counsel's objections, and need not be repeated here.

We have carefully examined both the testimony and the instructions of the court, and think the conflicting theories of the contending parties were fairly submitted to the jury.

The judgment will therefore be affirmed.