### William Henry Irvin v. The State.

No. 1282. Decided March 20, 1912.

Rehearing denied June 12, 1912.

**1.—Murder—Continuance—Want of Diligence.**

Where, upon trial for murder, defendant's application for continuance showed a want of diligence, and that the absent testimony was of an immaterial character and could have been shown by other witnesses, there was no error in overruling the motion.

**2.—Same—Evidence—Bill of Exceptions.**

Where, upon trial for murder, the defendant objected to certain testimony as to declarations between third parties, in the absence of the defendant, and the bill of exceptions was defective in not showing that the court verified the objections to the testimony, there was no error; besides the testimony could not have affected the rights of defendant injuriously.

**3.—Same—Evidence—Bill of Exceptions.**

Where the bill of exceptions, as to the conduct of the chief State's witness in going into the room where defendant was during a watermelon cutting, did not show wherein or how such testimony would have contradicted the testimony of the witnesses concerned, there was no reversible error; besides, the court had admitted testimony concerning the conduct of defendant and the chief prosecuting witness simply excluding the details thereof.

**4.—Same—Remarks by Judge.**

Where, upon trial for murder, the court excluded certain immaterial testimony, there was no reversible error in the court's remarks that he did not think the same had anything to do with the case.

**5.—Same—Evidence—Animus of Witness.**

Upon trial for murder, there was no error in permitting the State, on cross-examination of one of defendant's witnesses, to ask said witness whether he was not taking a great interest in the defense, etc., which he answered in the negative; besides this testimony was admissible to show the animus and prejudice of the witness.

**6.—Same—Charge of Court—Manslaughter—Assault and Battery.**

Where, upon trial of murder, the court submitted the law on both degrees of murder, manslaughter and self-defense, and also defendant's requested charges on the subject of self-defense, there was no error in the court's failure to instruct the jury on the definition of assault and battery, as this could not have injuriously affected defendant's right, and there was no error under article 723, Code Criminal Procedure.

Appeal from the District Court of Falls. Tried below before the Hon. Richard I. Munroe.

Appeal from a conviction of murder in the second degree; penalty, ten years imprisonment in the penitentiary.

The State's testimony showed that ill feeling existed between de-

fendant and the deceased, growing out of their relations with a certain married woman; that on the night of the homicide all the parties were at a social function or supper; that after the supper the said woman, Roberta Green, together with the deceased, left in a buggy with the two infant children of said woman, and that after proceeding a while they were overtaken by the defendant, and that the latter rode up on the side where the woman was sitting around back of the buggy wheel and asked whether they were all going in, to which she answered affirmatively; that the defendant then addressed the deceased saying that he had been trying to bully him for a long time, to which deceased replied that he had not; that the woman then told the defendant not to start any fuss; that defendant got down from his horse and walking in between the buggy wheels stabbed the deceased twice who then fell out of the buggy and died; that the deceased was doing nothing at the time and held the lines in his hand when he was stabbed, and did not have his hand on the buggy whip. She denied intimate relations with defendant.

The defendant's testimony showed that he and the woman had been intimate as sweethearts for some time, and that the deceased had interfered and that they had a few words over the woman; that on the night of the homicide the woman had promised him after supper that she would go home with him but she started off with the deceased, and that after a while he got on his horse and started also on the same road towards home and caught up with them, and that he reminded the woman of her promise to go home with him, etc., when the deceased spoke up and cursed and abused defendant, getting the buggy whip and striking defendant across the neck and shoulders, that deceased ran his hand down in his pocket and commenced coming towards defendant, when the latter jumped from his horse and cut him with his pocket knife, etc.

*Spivey, Bartlett & Carter,* for appellant.—Upon question of admitting testimony of third party in the absence of defendant: Chumley v. State, 20 Texas Crim. App., 547; Fuller v. State, 19 id., 380.

On question of the court's refusal to admit testimony as to intimacy between defendant and the chief State's witness: Russell v. State, 11 Texas Crim. App., 288.

Upon question of remarks by the judge: Reason v. State, 30 S. W. Rep., 780; Kirk v. State, 32 S. W. Rep., 1045; Bradshaw v. State, 70 S. W. Rep., 215; Simmons v. State, 117 S. W. Rep., 143; Walling v. State, 128 S. W. Rep., 625; Melton v. State, 124 S. W. Rep., 910; McMahan v. State, 135 S. W. Rep., 558.

On question of the court's charge on manslaughter: Riojas v. State, 9 Texas Crim. App., 95; Hackett v. State, 13 id., 414; Marshall v. State, 40 Texas, 200; Godsoe v. State, 108 S. W. Rep., 388.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, Judge.—The appellant was indicted for murder, convicted of murder in the second degree, and his punishment fixed at ten years in the penitentiary.

The first assignment is that the court erred in overruling his motion for a continuance. The continuance was sought because of the absence of several witnesses none of whom had been summoned. The bill, as qualified and allowed by the court, shows that appellant "was indicted January 14, 1911. He was then in jail. On January 17 the judge had him brought into open court for the purpose of appointing counsel to represent him if he had not employed and could not employ counsel. When brought in he stated to the court that he had employed counsel. At this time the court admonished him about issuing process for his witnesses, and told him to hand to the sheriff a list of his witnesses and that the sheriff would have subpoenas issued and summon his witnesses. The case was then set for January 25 for trial. On that date the case was crowded out because of another case on trial. It was then reset for February 1 and on that date again crowded out and reset for February 8, on which date it went to trial. The trial lasted two full days. The subpoena asked by the appellant for one of his witnesses was not requested and issued until January 30 and the process returned that he was not found in Falls County. On February 4, a subpoena was asked and issued for the same witness directed to Milam County, returnable February 8, and that subpoena was afterwards returned by the sheriff of Milam County, stating that he was unable to find the witness and that he had only one day in which to search for him. Appellant's counsel stated that he had never seen the return of the Milam County subpoena. This was the sole diligence to locate and procure this witness.

Evidence was heard by the court as to the diligence used to procure this and the other absent unserved witnesses and in the qualification of the bill the court states that he overruled the application for continuance because of lack of diligence to procure these witnesses, and the State's evidence showed that the witnesses other than the one above mentioned were shown to be transient persons whose homes and probable whereabouts were unknown, and that the only information as to their whereabouts was that they came from Arkansas and were supposed to have returned to said State or gone to the State of Oklahoma, no particular locality in either State as to where said witnesses, or either of them might be found. The court further states that the application as to these witnesses was overruled because the facts alleged in the application as to what defendant expected to prove by them were immaterial and irrelevant, because the State did not show or attempt to show that any trouble between appellant and deceased had occurred at the house at which the party was given, and that there were some twenty-five or thirty persons present at the party and several present in the courtroom who would testify that no difficulty occurred at the house, the application for continuance showing that that

was what he expected to prove by those witnesses. That on about February 1 a civil case was on trial and that one of the attorneys for appellant asked the court to reset this case as late in the term as he could, that he had just been employed and was in the civil case which would continue several days. The court then set the case for February 8, telling this attorney of appellant that the case would be tried on the 8th and that he must get ready, or as ready as he could for trial at that time. The trial of the civil case continued until on February 6." A continuance is always properly refused where there is a want of diligence. O'Neal v. State, 14 Texas Crim. App., 582; Hart v. State, 14 Texas Crim. App., 657; Childers v. State, 16 Texas Crim. App., 524, and a great number of other cases cited in sections 600 and 601, White's Code Criminal Procedure, page 393.

The next bill is by no means full and does not inform the court thereby sufficiently for it to require the court to pass on it, yet, we do pass on the question raised by the bill. It is to the effect that the court permitted the State to prove by Roberta Green, one of its witnesses, over appellant's objections, that her mother, Emma Foster, left the house where the appellant and deceased and a large number of others were congregated at a party that night before she did, and that she and her mother did not go home or start home together. The reason given was that her mother had the cramps and for that reason started home ahead of this. witness to be overtaken by them and picked up in a buggy. The appellant's objections were that he was not present when this conversation occurred between the witness and her mother and was immaterial. If the testimony was immaterial, which is not shown by the bill, it certainly was not of such character as to in any way injuriously affect the appellant. As to the other objection, that the appellant was not present, it will be noted that this is not stated and approved as a fact by the judge but is stated merely as one of appellant's objections to the testimony. It is too well established by the uniform and long line of decisions of this court that matters stated as objections in a bill will not be considered as approved, as a statement of a fact, by the judge, and can not be so considered by this court, to require a citation to the cases.

The next bill is to the effect that the court refused to permit appellant to prove by the witness Susie Irvin the reason why her mother desired the State's witness Roberta Green to remain at a watermelon cutting in the yard, instead of going into the room where appellant was, for the purpose of showing that Roberta Green and appellant were on intimate terms with each other and to contradict Roberta and her mother. The bill does not show wherein or how such testimony would have contradicted the testimony of either of these witnesses. Their testimony is in no way given. The court approved the bill, after qualifying it to the effect that defendant was allowed to prove anything going to show that the defendant and the witness Roberta Green were together, and anything which may have happened to show in-

timacy of their relations one towards the other. That no objection was made by the State to appellant showing that the witness Roberta Green left the watermelon cutting and went into the house where appellant was, but the details of the watermelon cutting, not concerning the conduct of appellant and the witness Roberta Green, were ruled out on objections because such details were immaterial and irrelevant to any issue in the case. No error is shown in this ruling.

The next bill is to the court's remarking in the presence of the jury that he did not think the watermelon cutting and soda water making had anything to do with the case, which was objected to because upon the weight of the evidence and tended to prejudice the jury against the defendant. Of course, if the testimony was excluded because it was immaterial, the court in effect stating so to the jury and excluding it on that account, was not error.

Appellant's next bills show that he excepted to certain questions, unnecessary to repeat, asked by the State of appellant's father, who testified on the stand for him, going to show that he was taking a great interest in the defense of the appellant, seeing witnesses thereabouts, and approaching them in an improper way and requiring the witness to answer them yes or no, and in not permitting him to go into the details of the various matters asked about. He answered each of the questions in the negative. The court in approving the bill as to the questions asked and the negative answers given by the witness, qualified it by stating that the witness was the appellant's father, and the questions as to what he had been doing in the way of getting up evidence was permitted for the purpose of showing his interest and bias in favor of the defendant, and for showing his motives for testifying in the case and also for the purpose of laying a predicate for the impeachment of the witness. As to the court's refusal to permit the appellant to go into the details of what the witness had done and said, the court qualified that bill by showing that the questions were asked for the purpose of laying a predicate to impeach the witness and were limited to what this witness said and did and were not as to what the witness, approached by his father, might have said or done. And further that the witness having denied making such statements and no impeaching testimony having been offered by the State, what really occurred was immaterial, irrelevant and hearsay.

It is always permissible for the adverse side to show the animus and prejudice on the part of a witness, and its extent. In such examination great latitude is allowed when the object is to impeach the credit of such witness. The adverse side may prove the declarations and acts of the witness which tend to show his bias, interest, prejudice or any other mental state or status, which fairly construed, might tend to affect his credibility. Pope v. State, 143 S. W., 612; Earles v. State, 142 S. W., 1181; O'Neal v. State, 57 Texas Crim. Rep., 249.

The court charged fully and aptly on murder in the first and second degrees, manslaughter and self-defense. Appellant requested many

charges presenting various phases of the evidence and appellant's defense, on the subject of self-defense. In addition to the court's charge on that subject, he gave all the charges asked by appellant. The only complaint of the charge of the court is that the court did not tell the jury that a stroke with a buggy whip would constitute an assault and battery and did not define what was meant by an assault and battery. The bill, and the evidence show that the appellant himself testified, though he was disputed on this point, that the deceased, at the time of the fatal difficulty and just before he was killed by appellant, struck him a blow with a buggy whip across the neck and shoulders thereby causing him pain. The court gave a full charge on manslaughter, strictly in accordance with the statutes, and expressly told the jury that an assault and battery by the deceased, causing him pain or bloodshed, was an adequate cause. The appellant requested no special charge whatever on this subject. We have carefully gone over and considered the testimony and the charge of the court and, in our opinion, even if it would have been proper for the court to have defined technically an assault and battery, that under the circumstances of this case, and considering the charge as it was given, it could not and did not injuriously affect the appellant and is no ground for reversal. Article 723, Code Criminal Procedure; Godwin v. State, 39 Texas Crim. Rep., 404; Lucas v. State, 39 Texas Crim. Rep., 48; Wright v. State, 40 Texas Crim. Rep., 45.

The judgment will be affirmed.

*Affirmed.*

[Rehearing denied June 12, 1912.—Reporter.]