### J. L. DAVIS v. THE STATE.

#### No. 5336. Decided March 5, 1919.

**1.—Murder—Bill of Exceptions—Practice on Appeal.**

Where the bills of exception failed to set out any facts pointing out the error in the ruling of the trial court, they cannot be considered on appeal.

**2.—Same—Insufficiency of the Evidence—Exculpatory Statement.**

Where, upon trial of murder, the State introduced the written statement of defendant made to the officers after the homicide, and the guilt of the defendant was wholly dependent on the testimony of the State (the defendant not having testified) and this wholly failed to show any guilty connection of the defendant with the shooting, but on the contrary the statement introduced by the State showed that the defendant remonstrated with others who did the shooting, his mere presence when the offense was committed

will not make him guilty, and upon the whole the evidence is insufficient to support the conviction.

Appeal from the District Court of Polk. Tried below before the Hon. J. L. Manry, judge.

Appeal from a conviction of murder; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*C. M. McKinnon*, for appellant.

*E. A. Berry*, Assistant Attorney General, for the State.—On question of insufficient bill of exceptions: Clayton v. State, 67 Texas Crim. Rep., 311; 149 S. W. Rep., 119; Douglas v. State, 58 Texas Crim. Rep., 122; Whitehead v. State, 61 id., 558.

LATTIMORE, JUDGE.—In this case appellant was charged in the District Court of Polk County with the offense of murder and upon his trial was convicted and given fifteen years in the penitentiary.

J. H. Hawkins, a colored brakeman, was shot and killed at night while standing on the engine gangway of a moving train in Polk County, Texas. Several shots were fired from the dirt road running parallel with the railroad track and about thirty steps distant therefrom. One struck the brakeman, killing him, and one struck the caboose. The bullet extracted from the body of deceased was a thirty-eight caliber, as also was the one gotten out of the caboose. It was proven without contradiction that appellant owned a thirty-eight caliber pistol; that on the night of the homicide he with Tom Banks and Garnet Davis, two other negroes, were walking along said dirt road not very far from the place of the shooting, only a short distance before the same. Also that some days after the shooting appellant and the other two negroes were arrested, placed in separate cells in the jail, and by various methods of persuasion, lasting until four o'clock in the morning, all three were induced to make "voluntary" statements which were reduced to writing. Appellant seems to have made his early in the night but the other two were more obdurate and their willingness did not manifest itself until repeated visits from the officers with reports to each suspected as to what the others had said. A significant statement of one of them appears in the testimony of the witness Holliday, the constable. We give his statement as follows:

"I do not remember what time it was I finished getting these statements and I do not think it was as late as four o'clock in the morning. I was not up all night getting those voluntary statements; All of them kicked in in 30 minutes of one another after this negro told me about it. I says: 'John L' this nigger, told it. That negro there was trying to put it on Banks first and that threw them two

boys—the two Davis boys—that would throw them in the clear and put it of on Tom, and Tom was the last to kick in; I told him, I says: 'All those niggers down stairs done told all about it,' and he asked me what they said and I told him what they said; he went ahead and told me about Garnet having the gun and both of them standing side by side when they were doing the shooting, when he aimed at the engineer. I do not mean that Davis told me but that Tom told me that.''

The written statement of the appellant made the night of the arrest, to the officers, was introduced in evidence by the State over appellant's objection. Said statement is as follows: ''The State of Texas, County of Polk. The following is a voluntary statement of John L. Davis made to me John McLoed on this the 3rd day of October, A. D., 1918, after having been duly warned by me John McLoed that he did not have to make any statement at all, and that any statement made may be used in evidence against him on his trial for the offense concerning which the confession is therein made. On Sunday night September 29th. in company with Tom Banks, Jr. and Garnett Davis, we were walking along the dirt road from New Willard to Leggett, Texas, and a short time after leaving New Willard we saw the light of a train on the HE & WT track coming south and just before the engine reached us, Tom Banks said 'Less shoot into the train' and I told him not to do it, but he went on a little farther and did shoot at the engine as it passed, and just as soon as the first shot was fired I turned and run off into the woods, and as I was running I heard either one or two shots, and about the time the caboose passed there was two more shots fired. I saw Tom shoot into the engine, but I did not see him shoot into the caboose, I did not see Garnett Davis shoot any, but I heard him say that he had shot at the train, and I know there was two different guns fired for I could tell the difference in the sound of them, and I know that Garnett Davis took some empty shells out of his pistol just after they caught up with me in the woods. Just after we got back into the public road we passed some automobiles, and Tom Banks said 'Less shoot them cars,' and I said no, for I think you all have shot enough or too much. We then went through the wire fence onto the railroad track and walked along it to where Garnet Davis turned off to go home, and Tom and I went on to Leggett together. I saw Tom early next morning and he told me that a man had been killed on that train and asked me not to say anything about it, and I also saw him again that evening, and he asked me again not to say anything about the shooting into the train the night before. I told him I would not say anything about it. The gun Tom Banks was shooting that night belonged to me and was a 38-caliber Colts gun, and Garnett was shooting a 45-caliber gun. (Signed) John L. Davis. Witnessed by F. W. Young, V. B. Hinson, R. B. Davis.''

2—T. C.

Appellant presents but two bills of exception but as neither of them contains or sets out any facts therein showing error in the ruling of the trial court same cannot be here considered by us.

There is but one question presented by the record, and that is, the sufficiency of the testimony to sustain the verdict.

The State itself introduced the statement of appellant made to the officers after the homicide, not only as to the fact that it was his pistol with which part of the shooting was done, but also showing that he remonstrated with the others when Banks says "Less shoot into that train," and that when Banks did fire that the appellant turned and ran off into the woods and that he was still running when the other shots were fired; also that there were two guns fired; that he did not see Garnet Davis shoot, but heard him say shortly thereafter that he had shot at the train; that when Davis and Banks overtook the appellant shortly after the shooting, Davis took some empty shells out of his pistol.

It will be noted that appellant introduced no testimony, so that his guilt is wholly dependent on the testimony of the State. Two things are necessary to make out appellant's guilt; that is, the death of the injured party and the criminal connection of appellant therewith. The first is conceded; as to the last, three facts appear in evidence independent of appellant's own statement, to-wit; first, the presence of the accused when the shooting took place; 2nd, that it was done with a pistol of the same caliber as his own; 3rd., that when arrested he first denied knowledge of the shooting. These, we believe, are the only guilty facts in the record.

Mere presence of an accused when an offense is committed will not make him guilty; there must be some character of guilty connivance or participation. In order to show some character or guilty connection, and that his pistol was used, the State used the entire confession and statement of the appellant above set out. Just why it did so we are not able to perceive, but having introduced the same we think the State is bound by said statement, unless there is some other evidence in the case on which the jury might base a rejection thereof. In other words, the State might have introduced only that part of appellant's statement relative to the pistol, leaving to him, if he saw fit, to introduce the whole statement or so much thereof as was relevant to that part put in evidence by the State; but instead of following this course the State introduced the whole statement. If its purpose in placing this in the record was to show that appellant used the pistol, it wholly failed because the statement "the gun Tom Banks was shooting belonged to me and was a thirty-eight caliber Colts gun" makes it plain that appellant's gun was not being used by him but by Tom Banks. Appellant's denial to the officers of knowledge of the shooting did not continue long after his arrest, as appears from their statements, and the rea-

son of his refusal at first is disclosed in said statement by the fact that when Banks discovered that his reckless shooting had resulted in the death of a human being he came to appellant and asked him not to tell on him, and appellant promised that he would not do so.

We have searched the record carefully to find if there was any kind of evidence that more than one person shot or that more than one pistol was fired, and the only thing we are able to find is the significant statement of Tob Banks quoted above after being told by the constable that "those negroes down stairs have done told all about it, and he asked me what they said and I told him what they said; he went ahead and told me about Garnet having the gun and both of them standing side by side when they were doing the shooting, when he aimed at the engineer." This statement of Banks is in entire accord with the statement of the appellant, supra, to-wit—, that Garnett was shooting as well as Banks. It will also appear that no reference is anywhere made to appellant's having participated with the other two in any manner in the shooting. As we view the record, it wholly fails to show any guilty connection of appellant with the shooting, but on the contrary the statement introduced by the State shows that he remonstrated with Banks and when Banks fired the first shot that appellant ran away and did not return.

When evidence is merely conflicting we will not ordinarily disturb verdicts of juries, but when we are unable to find any substantial evidence supporting the conviction we will not hesitate to so decide. This is a strong case of evil association but the State's own evidence makes appellant's guilt so questionable that this court is not willing to allow the verdict to stand.

The judgment of the lower court is accordingly reversed and the cause remanded for another trial.

*Reversed and remanded.*