W. R. Richards v. The State.

No. 5581. Decided December 10, 1919.

**1.—Murder—Provoking Difficulty—Self-defense—Charge of Court.**

Where, upon trial of murder and a conviction of manslaughter, the State claimed that defendant armed himself and lay in wait for deceased and defendant claimed threats and attempts against his life, and that he sought the deceased with the view of effecting a peaceful settlement and that deceased assaulted him and he had to kill him, the evidence did not raise the issue of provoking the difficulty, especially where the State introduced these statements of the defendant, and did not disprove them, Following: Pratt v. State, 59 Texas Crim. Rep., 635, and other cases.

**2.—Same—Provoking Difficulty—Lying in Wait.**

Even if the State's theory, that the defendant was lying in wait, be .accepted as true, it would appear .that the intent to provoke a difficulty was excluded. Following: Cheatham v. State, 57 Texas Crim. Rep., 442, and other cases.

**3.—Same—Self-defense—Going Armed—Rule Stated.**

The accused would not forfeit the right of self-defense, by the mere act of arming himself and seeking an interview with the deceased for the purpose of bringing about a peaceful settlement. Following: Shannon v. State, 35 Texas Crim. Rep., 2.

Appeal from the District Court of Eastland.    Tried below before the Hon. Joe Burkett, judge.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*S. W. Bishop, J. A. Moore,* and *J. R. Stubblefield,* for appellant.

*Alvin M. Owsley,* Assistant Attorney General, for the State—On question of charge of court on provoking difficulty: Kiney v. State, 144 S. W. Rep., 257.

MORROW, Judge.—The appellant upon an indictment for murder was convicted of manslaughter.

The appellant and deceased Gillette appear to have been farmers and neighbors.  The appellant purchased the ·deceased's farm from him, and owing to oil developments in the community the deceased was dissatisfied with the transaction, and in conversation with appellant and others expressed his dissatisfaction, and claimed that appellant had misled him. There is much evidence indicating that deceased assumed a hostile attitude toward the appellant, made specific threats to kill him which were communicated to appellant, and some of which were made in his presence. On one occasion some days before the homicide, according to the testimony of appellant and his son, the appellant while he was on the farm which he had rented from the deceased was violently abused by the deceased who held a, pistol in his hand, and at the same time assured appellant that if he ever made a track upon the land again he would be killed. A similar occurrence, according to appellant's testimony, took place upon the day of the homicide, at which time the deceased with a pistol in his hand undertook to intercept the appellant, and he escaped the encounter only by fast driving.  He said that the matter had reached a stage where he determined that some efforts at settlement were imperative, and that he determined to make an effort to have an interview with the deceased and to propose to compromise their differences by allowing the deceased to have a part of the royalty attached

to the land by reason of the oil developments; that with this end in view he started to find the deceased, arming himself however with a pistol and a gun, as he claimed for the purpose of self-protection in the event he was attacked by the deceased. While on this mission the meeting took place in which the deceased was killed and the appellant severely wounded.

There were no eyewitnesses other than the appellant. They were discovered when one of the State's witnesses, attracted by the shouts of the appellant, went into the pasture belonging to a Mr. Hudson, and there found in a clump of trees and bushes some fifty yards from the road the appellant and deceased lying upon the ground two or three feet apart, the deceased dead and the appellant severely wounded in a number of places. On the ground near them were two shotguns and two pistols. The appellant said to this witness, "I am shot all to pieces, and he is dead."

A few minutes before he was killed deceased left the home of Mr. Hudson, Mrs. Hudson testified for the State that she heard a gun fire soon after deceased left and she looked out and saw Gillette, deceased, going under or through the fence; that she saw him running and heard more shots fired, and that while running and immediately after he had got through the fence she saw him fire a pistol or a gun. The deceased at the time was going in the direction of the place where his body was found.

The State proved statements of appellant to the effect that he had made a fair deal with deceased for his land and that deceased's subsequent dissatisfaction was without just cause; that prior to the homicide the deceased had on several occasions threatened to kill him, and on some of them had tried to do so. When these witnesses reached the parties the appellant said, "He is dead, and I am as good as dead;" that prior to the meeting the deceased had made a gun play, and appellant, believing he was about to be killed, had escaped by outrunning the deceased and that he realized thereafter there would be a killing unless there was a compromise and that he returned for the purpose of trying to talk and compromise; and that before the shooting he tried to attract the deceased by hallowing and opening a discussion; that the deceased advanced upon him without answering while the appellant retreated; that as the deceased got through the fence he drew his gun, and the appellant, seeing that he was in the act of shooting, fired, both of them firing at the same time; that deceased was then making towards him; that they continued to shoot at each other, the deceased advancing, and the appellant having received a broken leg remained stationary; that when deceased got to appellant they had a struggle over a gun, appellant's pistol being empty, and they both fell upon the ground; that the appellant then thought the shooting was over, and that they were both shot to death; that after lying on the ground awhile he looked up to see if deceased was dead, when he saw him getting up on his elbows and

trying to get on the appellant, and appellant reached for his gun and shot again, killing him.

The appellant testified in substance in accord with his statement as detailed by the State's witness, going into considerable detail with reference to the business transaction and the various attacks, threats, and assaults upon him by the deceased. His conversation with the justice of the peace which was verified by the latter, suggesting that the deceased be put under a peace bond,. was also detailed by him. He said that after starting to go and talk with the deceased he concluded he would go back and attempt to have the officers disarm the deceased, and as he turned back a rabbit jumped up in front of the dog that was with him and he heard a sound and a gun fire, and looking up saw the deceased, but was unable to tell whether he was going up the road or approaching; but that when he reached the fence deceased got over the fence or through it, had a pistol in his hand, and was looking right at the appellant, at which time appellant picked up his gun, which he did in order that deceased might stop. The deceased did stop and then ran toward the appellant and was in the act of shooting when the appellant also fired. Appellant claimed that he waved his hand and tried to stop the shooting, but seeing that deceased intended to continue it the appellant raised his shotgun when deceased fired again, breaking the appellant's leg. He then described numerous shots fired by each of them as the deceased advanced, circling appellant, both availing themselves of the protection afforded by the trees; that a cartridge hung in his gun, and he dropped over on his side and elbow to keep the blood from running down his throat; that he got his Winchester to working, and deceased reloaded, and both parties continued the shooting. Appellant claimed that he was dazed by the wounds. He described a hand-to-hand struggle, which culminated in both him and the deceased falling to the ground from exhaustion as he supposed, that his idea was that both of them were going to die; that after remaining in this position a while appellant raised his head to talk to deceased, and he saw the deceased was in the act of reaching for a pistol which was lying between his legs, when the appellant reached for his gun and shot the deceased again, killing him dead.

The State advanced the theory that appellant armed himself and hid among the trees and brush in the pasture for the purpose of waylaying the deceased. So far as this issue is supported by the evidence it comes from the facts which have been substantially stated. The appellant insists that the facts do not justify the court in qualifying his right of self-defense by a charge of provoking the difficulty. We think this charge was not authorized.

The appellant's theory and testimony are to the effect that he realized from the threats and attempts upon his life made by the deceased that a difficulty was inevitable unless a compromise was

27—86—T. C. R.

made; that he sought the deceased · with the view of effecting a settlement, and that he armed himself to protect his life in the event the interview which he was attempting culminated in an assault by the deceased; and that in the exchange of shots described by him the deceased was the aggressor, and that the aggression was not brought about by the appellant, but was a manifestation of deceased's predetermination to kill appellant as indicated by his previous threats and attempts against the appellant's life. This theory, arising from the appellant's testimony, is accentuated by the fact that the State through its own witnesses introduced the declarations of the appellant showing that the appellant had killed the deceased, and detailing in a manner in substantial harmony with his own testimony the incidents and causes of the homicide. By the introduction of these statements the State became bound by the truth of all of them that were not disproved by the evidence before the jury: Pratt v. State, 59 Texas Crim. Rep., 635; Bailey v. State, 65 Texas Crim. Rep., 1; Sharp v. State, 81 Texas Crim. Rep., 256, 197 S. W. Rep., 209; Davis v. State, 85 Texas Crim. Rep., 15, 209 S. W. Rep., 749.

If the State's theory that the appellant was lying in wait be accepted as true, we are unable to discern the evidence upon which the jury would predicate a finding that in so doing his intent was to provoke the deceased to attack him in order to produce the occasion to kill the deceased. Such intent is an essential element in the law of provoking the difficulty; Winters v. State, 37 Texas Crim. Rep., 582; Young v. State, 53 Texas Crim. Rep., 417; and the existence of such intent in the absence of some word or act reasonably calculated to effect the end intended is insufficient. Cheatham v. State, 57 Texas Crim. Rep., 442; Rasbury v. State, 84 Texas Crim. Rep., 393, 208 S. W. Rep., 169; Branch's Annotated Texas Penal Code, p. 1099.

The appellant would not forfeit the right of self-defense by the mere act of arming himself and seeking an interview with the deceased for the purpose of bringing about of a peaceful adjustment of their difficulties. Shannon v. State, 35 Texas Crim. Rep., 2.

There are other questions involved, but none of them are such as are likely to arise upon another trial. For the error pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*