## FLOYD YOUNG v. THE STATE.

No. 6360. Decided October 26, 1921.

Rehearing Denied April 26, 1922.

1.—Murder—Variance—Name—Arrest of Judgment.

The question of variance between the name of deceased, as alleged, and as same appears in the proof. cannot be of avail when raised in motion in arrest of judgment. This only reaches the indictment.

2.—Same—Conscientious Scruples—Veniremen—Capital Case.

The State, in questioning veniremen, in a capital case, dependent upon circumstantial evidence has the right to ask each man if he has conscientious scruples against the infliction of death as punishment in such case. Following Borders v. State, 72 Texas Crim. Rep., 135.

3.—Same—Jury and Jury Law—Veniremen—Deputy Sheriff—Challenge for Cause.

That the veniremen, in a capital case, has been a deputy sheriff and has served some process in said case. is not *ipso facto* ground for challenge for cause, he being otherwise qualified.

4.—Same—Evidence—Letters—Handwriting—Bill of Exceptions.

Where letters were offered by the State and objected to because not signed, and not shown to be in the handwriting of defendant. and the bill of exceptions showed that abundant proof was offered by the State upon said issue, there was no error.

5.—Same—Witness Under Rule—Practice in Trial Court—Discretion of Court.

Excusing the sheriff from the rule and permitting him to remain in the courtroom while other witnesses were testifying is a matter largely within the discretion of the trial court, and in the absence of abuse of discretion, there was no reversible error.

6.—Same—Evidence—Part of Statement—Rule Stated.

While it is statutory that when a part of a statement is introduced in evidence the whole of such statement, upon the same subject becomes admissible by the opposite party, it is not necessary that the party introduc-

ing such statement shall introduce all of it. Following Davis v. State, 85 Texas Crim. Rep., 15, 209 S. W. Rep., 751.

**7.—Same—Practice in Trial Court—Document—Letters.**

Letters and documents in evidence may be taken by the jury in their retirement.

**8.—Same—Circumstantial Evidence—Charge of Court.**

When the court has charged on circumstantial evidence, it is not necessary that the jury be expressly told that this is a case of circumstantial evidence. Following Henderson v. State, 50 Texas Crim. Rep., 268, and other cases.

**9.—Same—Remark of Witness—Practice in Trial Court.**

A reference by the court to that which is excluded, of testimony of a witness at the request of the accused, to the effect that it is of no weight is not error capable of injuring the defendant. Following McGee v. State. 37 Texas Crim. Rep., 658, and other cases.

**10.—Same—Evidence—Expert Witness—Handwriting—Comparison.**

Cashiers and officers of banks, etc., who had had experience of passing on many signatures and letters may be held experts, regardless of whether they think themselves such and may testify to handwriting by comparison. Following Crow v. State, 33 Texas Crim. Rep., 364.

**11.—Same—Evidence—Handwriting—Letters—Amanuenses.**

Where it was shown that the defendant could write and prior to his arrest had frequently written, there was no error in permitting the introduction of letters in evidence which were claimed by the State to be in defendant's handwriting, although it was shown that while defendant was in jail he got a fellow prisoner to do all his writing for him.

**12.—Same—Evidence—Cross Examination—Recalling Witness.**

Where defendant complained that he was deprived of the right to cross-examine a certain state's witness, having deferred such cross-examination for a time, but there is nothing in the bill of exceptions that the defendant was deprived and not allowed to ask said witness such questions as he wished when she was recalled, there was no reversible error, although it would have been erroneous to refuse to permit him to examine her at all, but in the absence of any injury, there was no reversible error.

**13.—Same—Evidence—Rebuttal—Bill of Exceptions.**

Where the bill of exceptions, setting out the objections to the recital of certain testimony, gives no fact by which this court may determine how or in what way said evidence was not in rebuttal, there was no reversible error.

**14.—Same—Argument of Counsel—Requested Charge—Reversible Error.**

Where, upon trial of murder, State's counsel stated to the jury that there was no middle ground in the matter, and that the jury should hang the defendant, etc., and the court orally instructed the jury not to consider such remarks, there was no reversible error under the facts in the instant case, no written request or special charge relative to the matter having been asked for.

**15.—Same—Bill of Exception—Evidence.**

Sufficient facts must appear in the bill of exceptions to enable this court to determine the correctness of objections made to certain evidence.

16.—Same—Argument of Counsel.

Where the court orally instructed the jury not to consider the closing argument of state's counsel, and the matter was not so injurious as to merit a reversal, in the absence of a written request, there is no error.

17.—Same—Husband and Wife—Cross-Examination—Acts of Witness.

Where, upon trial of murder, on cross-examination of defendant's wife about a certain pair of old shoes, which she denied being hers, there was no error to ask her if it was not true that when the sheriff and her father presented those shoes to her and asked her if they were not hers she did not break down and cry.

18.—Same—Bill of Exceptions—Practice in Trial Court.

Where defendant, at the end of the record took a general bill of exceptions to the various qualifications to other bills of exceptions, but no facts were pointed out which would show such error, there was no reversible error.

19.—Same—Sufficiency of the Evidence.

Where, upon trial of murder assessing the punishment of imprisonment in the penitentiary for life, the evidence supported the conviction, there was no reversible error.

20.—Same—Name of Deceased—Rule Stated—Variance.

Where the name of deceased was used both ways as "Shook" and "Shooks," all through the trial, and no objection thereto was reserved thereto by defendant, there is no merit in the contention that there is a variance in the allegation and proof of such name.

21.—Same—Evidence—Letter—Bill of Exceptions.

Where a certain letter was objected to because it was a privileged communication between husband and wife, but the bill of exceptions did not show any such ground, there was no reversible error.

22.—Same—Evidence—Bill of Exceptions—Practice and Appeal.

Where defendant was seeking to have the jury directed not to consider the testimony with reference to what the defendant claimed he had done while under arrest with reference to letters which a certain witness testified had been written for the defendant by a fellow prisoner, but the bill does not point out whether the information from said witness was elicited by the state or the defendant, and was otherwise defective, the same could not be considered, as the record presents itself.

Appeal from the District Court of Liberty.  Tried below before the Honorable J. L. Manry.

Appeal from a conviction of murder; penalty, life imprisonment in the penitentiary.

The opinion states the case.

*C. W. Nugent* and *F. M. Stevens,* for appellant.—On question of variance in name of deceased: Humbard v. State, 21 Texas Crim. App., 200; Brown v. State, 53 Texas Crim. Rep., 303; Harrison v. State, 48 id., 44; Hankins v. State, 122 S. W. Rep., 22.

91 Tex.—33

On question of certain letters written while in jail: Nolen v. State, 14 Texas Crim. App., 474.

*R. G. Storey*, Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was convicted of murder in the District Court of Liberty County, and his punishment fixed at confinement in the penitentiary for life.

In disposing of the various contentions made by appellant, we will not attempt to set same out at length but will discuss the principle involved in each of said contentions, and give our conclusion regarding same.

The question of variance between the name of deceased as alleged, and as same appears in the proof, cannot be of avail when raised in motion in arrest of judgment. Such motion only reaches errors of substance in the indictment or information. Art. 849 Vernon's Crim. Proc.

The State in questioning veniremen in a capital case dependent on circumstantial evidence, has the right to ask each man if he has conscientious scruples against the infliction of death as punishment in such case. Borders v. State, 72 Texas Crim. Rep., 135, 125 S. W. Rep. 135.

That a venireman in a capital case had been a deputy sheriff and had served some process in said case, is not ipso facto ground for challenge for cause, he being otherwise qualified. Art. 692 Vernon's Crim. Proc.

Letters offered by the State were objected to because not signed, and not shown to be in the handwriting of appellant. The bill of exceptions shows same to have been admitted upon promise of State's counsel to show that same were in appellant's handwriting, and said bill is approved with the statement of the trial court that abundant proof was offered by the State upon said issue. The bill shows no error.

Excusing the sheriff from the rule and permitting him to remain in the courtroom while other witnesses were testifying, would be a matter largely within the discretion of the trial court. Appellant's bill of exceptions No. 6 shows no abuse of such discretion.

While it is statutory (Art. 811 Vernon's Crim. Proc.) that when part of a statement is introduced in evidence, the whole of such statement on the same subject becomes admissible by the opposite party, it is not necessary that the party introducing such part of a given statement, shall introduce all of it. The adversary may do so if he desires. Davis v. State, 85 Texas Crim. Rep. 15, 209 S. W. Rep. 751.

Letters and documents in evidence may be taken by the jury in their retirement. Art. 751 Vernon's C. C. P. and authorities cited.

The court charged on circumstantial evidence. When this is done it is not necessary that the jury be expressly told that this is a case of circumstantial evidence. Henderson v. State, 50 Texas Crim. Rep. 268; Pennington v. State, 48 S. W. Rep. 507.

Appellant asked that a remark .of a witness be stricken from the record. The trial court said, "I will strike it from the record, but it don't amount to anything. Gentlemen, you will not consider it." A reference by the court to that which is excluded at the request of the accused,—to the effect that it is of no weight,—is not error capable of injuring appellant. Irvin v. State, 67 Texas Crim. Rep. 108, 148 S. W. Rep. 589; Yates v. State, 68 Texas Crim. Rep., 437, 152 S. W. Rep. 106; McGee v. State, 37 Texas Crim. Rep. 668; Newman v. State, 64 S. W. Rep. 259.

Witnesses at the time of trial and for many years past who had been cashiers and officers of banks and had worked in tax collectors' offices and other places where they had been called on to pass on many signatures and letters each day, may be held experts by the court regardless of whether they think themselves such or not, and may be used to testify to handwriting by comparison. Crow v. State, 33 Texas Crim. Rep. 264.

Incriminating letters in evidence were claimed by the State to be in appellant's handwriting. Numerous witnesses testified to the fact that they were in his handwriting. A witness testified that while appellant was in jail he got a fellow prisoner to do all his writing for him. Appellant moved to strike out such evidence after same had been given. The accused may not ordinarily wait till a question is answered and then make such motion, but we think the evidence was admissible, it being shown that appellant could write and prior to his arrest had frequently written.

Appellant's bill of exceptions No. 31 complains that appellant was deprived of the right to cross-examine Mrs. George Snook, a State witness. It appears that when this witness concluded her direct evidence, appellant volunteered the statement that the witness was in such physical condition as that he did not care to cross-examine her, and that he reserved the right to call her back later and cross-examine her. The court said "All right." The State introduced some twenty other witnesses and rested its case. After several defense witnesses had testified and while the wife of appellant was on the stand, there arose a dispute as to certain testimony of Mrs. George Snook, about which appellant's wife was asked, and it was stated that such testimony would not be admissible except a predicate be laid, and thereupon appellant's counsel stood Mrs. Young, the appellant's wife, aside and had Mrs. Snook recalled. After asking her several questions objection was made to the form of a question, and appellant then claimed the right to cross-examine said witness, basing such right upon the fact that when said witness left the stand as above stated,

he reserved the right to call her back and cross-examine her. The court intimated that in his opinion counsel had no right to call said witness at that stage of the case and cross-examine her, whereupon appellant reserved a bill of exceptions to the statement of the court, and then, stating that he did not waive any of his rights based on said bill of exceptions, appellant stated he would examine said witness as a witness for defendant, and proceeded to ask her a number of questions, all of which she answered, and at the conclusion of such examination appellant stood her side and recalled Mrs. Young, his wife, and proceeded with her examination. There is nothing in the bill of exceptions or the record which shows that any question was asked of Mrs. Snook when placed on the stand by appellant which she was not allowed or required to answer, nor is it disclosed there was any evidence on her part which appellant was not allowed to bring out. Nor is it intimated in the bill of exceptions that if permitted to further examine said witness, or to examine her in a different manner, she would have in anywise aided appellant's cause or weakened that of the State. We are of opinion that as nothing was said when this witness was first excused, as to when her cross-examination was to be had, and apparently no attention of appellant was called, before beginning the introduction of his evidence, to the fact that he had failed to cross-examine said witness, it would have been erroneous to refuse to permit him to examine her. We do not think the order of the introduction of testimony of sufficient importance to adhere thereto when such course would deprive either side of material evidence. McCue v. State, 75 Texas Crim. Rep., 137, 170 S. W. Rep. 280. The complaint of appellant under discussion, however, will be held of no avail because he wholly fails to show that he has been injured or deprived of any testimony which would have been material, or that he wished to ask some question which was not allowed.

Tobe Butler was allowed to testify, in the State's rebuttal evidence, that he threw a double-barreled shotgun in a certain dipping vat to keep Joe Worsham from shooting him. The bill of exceptions setting out the objection to this recites no fact by which this court may determine how or in what way said evidence was not in rebuttal, and, therefore, no error is presented.

The State's attorney used the following language in his argument to the jury: "There is no middle ground in this matter. You should hang Floyd Young. You should inflict the extreme penalty. He will have time to pray. He will have time to wind up his affairs. He will have time to select and buy his coffin.

Of course, I would be sorry for the defendant's little children, but if I were in their place I would not want a daddy whose fingers were dripping with the life blood of the sister of my mother.

A man who would commit such a crime ought to be killed, and a man who would kill a man for so wronging a member of his family ought to be and would be acquitted by any jury in this State.''

Upon objection by appellant the court orally instructed the jury not to consider said remarks. No written request or special charge relative to the matter is in the record. We do not think the language so far removed from the realm of legitimate appeal as to merit a reversal under these circumstances. The deceased, a young girl, and sister-in-law of appellant, was killed while sitting in her own room by some one shooting from the outside in the night-time. The girl had been previously debauched, and had given birth to an illigitimate child while an inmate of appellant's home, responsibility for which fact the State laid at the door of appellant. Letters seeking further intimacy and threatening the death of deceased were found in her trunk after her death and testified to as being in appellant's handwriting. Many other circumstances, some of which will be mentioned later, appear in the record. We can find no ground for censure in such case of a State's attorney whose appeal for a death sentence was in no stronger terms than those set out.

There is nothing in appellant's bill of exceptions No. 37, which shows that the evidence objected to was not pertinent. It is not enough to say that the fact in evidence was too remote and may have had a bearing not in accord with the State's contention. Sufficient facts must appear in the bill of exceptions to enable this court to determine the correctness of the objection made.

Appellant's bill of exceptions No. 38 also complains of language used by the State's attorney in his closing argument. The court orally instructed the jury not to consider this, but no written request or special charge to that effect was asked. We do not believe it so injurious as to merit a reversal.

On direct examination appellant's wife was asked about a certain pair of old shoes which formed a link in the State's chain of circumstantial evidence, and also about a conversation had with her by the sheriff about said shoes in which it appears that she denied the shoes being hers. It was not error to allow the State on cross-examination of this witness to ask her if it was not true that when the sheriff and her father presented those shoes to her and asked her if they were not hers, she did not break down and cry.

There are other bills of exception, all of which we have examined but none of which present any error, and a ruling on which would elucidate no new proposition.

There appears at the end of the record a general bill of exceptions taken by appellant to the various qualifications to his other bills of exception. No facts are stated or referred to which would show the error of the qualifications affixed by the trial court to said bills, and

in such condition of the record we are unable to say that said quali-
fications were not fair and proper.

Appellant in his motion for new trial, and in other ways raised
the question of the sufficiency of the evidence to support the judg-
ment. This is a question which in most cases is decided from an ex-
amination of the State's case as made before the jury. Discussing
same, it appears that when deceased was a girl fifteen years of age
she began living in appellant's home; that after she had been there
some months appellant went to a doctor and wanted from him medi-
cine "to bring a woman around," which was refused; that some
months later deceased gave birth to a child; that appellant paid the
expenses incident to her illness, and in company with his wife and
another relative carried the child to a home for foundling children
in Houston, paying the expenses of that trip, and also for the care
of the child; that as soon as deceased was able to be removed after
the birth of said child, she was taken to her father's home and for-
bidden to further associate with appellant; that her mother accused
appellant of being the author of the young girl's ruin, and he made
no denial; that in August, September and October previous to the
killing of deceased on October 22nd, she received four letters couched
in terms of extreme affection entreating her to meet the writer at
various places and threatening her with death if she did not do so;
these letters were testified to by a number of people as being in ap-
pellant's handwriting; the last of said letters recited the fact that
deceased had paid no attention to the others, and that if she did not
pay attention to this one it would not be long until she would be
killed; within the week preceding the homicide appellant bought a
single barrel, second-hand, breech-loading shotgun; a day or two
before the killing he bought two buck-shot shells of a kind known
as "Peters Referee"; deceased was shot in the head with buckshot on
the night of October 22, 1919, killing her instantly, the shot being
fired from outside her father's house; tracks were found that night
and further examined the next morning, leading from a pond near
by the house of deceased's father to a point near the house, the person
making them seeming to go an ordinary gait,—and then leading from
said house back to said pond, the wearer seeming to be running; said
tracks had peculiarities about them which were detailed; a careful
search of said pond brought to light a pair of shoes giving evidence
of having been cut, as though hastily cut off a foot, which fitted
said tracks and which were identified as being a pair of old shoes
belonging to appellant's wife, but which were large enough for him
to wear; on the opposite side of said pond from the home of de-
ceased's father, tracks and trampled ground as though made by a
horse being hitched, were found and emerging from the pond and
going to the horse's tracks was also found a human track made by
a different shoe than the ones above described; the horse tracks were

traced to an old road where the animal apparently began to gallop, and was tracked on from there to appellant's lot; hanging in his barn and around his premises were found a saddle with wet stirrup leathers and a wet girth, and a pair of appellant's trousers wet below the knees, and on a table were found several buck-shot shells, one of a different kind and color from the others; the parties tracing the horse tracks took careful measurement of them and the next day compared them with one of appellant's horses, and found them to correspond exactly; in a deep pond, through the edge of which ran the road on which the horse tracks were found leading to appellant's house, was later found the single-barrel, breech-loading shotgun purchased by appellant just before the homicide and which he had claimed to have sold to a negro; when found said gun had an exploded shell in it which upon examination was found to be a Peters Referee. If the evidence thus stated fails in any point to make out a complete chain of circumstantial evidence from which there is no escape, we confess ourselves unable to judge of a case thus made out. We regret being unable to agree with able counsel for appellant in his conclusion about the same. We have gone through this record with much care because of the severity of the penalty imposed upon this appellant, but are unable to conclude that he has been denied any right or privilege accorded him under the law or our Constitution, and we are of opinion that his defense has been presented, and that the evidence contained in the record warrants and supports the verdict against him.

The judgment of the trial court will be affirmed.

*Affirmed.*

#### ON REHEARING.

### April 26, 1922.

HAWKINS, JUDGE.—In his motion for rehearing appellant urges that we were in error in holding that the alleged variance in name between that of deceased as alleged in the indictment and as the same appears in the proof could not be raised in motion in arrest of judgment. We do not find this question raised in any other manner in the record. There appears to have been no objection interposed to prove that deceased's name was Bertha Snooks and no special charge requested incident to such alleged variance. We find upon the bill of exception complaining at the overruling of the motion in arrest of judgment the following notation by the trial judge. "The name of the deceased was used both ways all through the trial and no objection reserved by defendant." In looking to the statement of facts we find that the witnesses referred to the surname of deceased as both "Snook" and "Snooks" and that a brother of deceased gave

his name as "Snooks." This examination of the statement of facts, together with the explanation of the trial judge on the bill of exceptions leads us to believe that there is no merit in the contention urged by appellant, and that the record sufficiently shows that the deceased was known both as Bertha Snook and Bertha Snooks.

Appellant complains that a certain letter designated as letter number five was inadmissible even for the purpose of comparison of hand-writing as it was a privileged communication written by appellant to his wife, Mrs. Minnie Young. We have been unable after a diligent search through the record to find where any objection was reserved relative to such letter on that account. Appellant's bill of exception number 4 appearing on page 58 of the transcript apparently reserves exception to the introduction of letters numbers, 1, 2, 3, 4 and 5, but the bill sets out only letters 1, 2, 3 and 4, and the bill appears to complain because the four letters were admitted in evidence without sufficient proof that they were in the handwriting of appellant. No mention is made whatever in such bill of letter No. 5 except in the beginning thereof. In bill of exception No. 7 it appears that defendant· objected to the introduction of letter No. 5 but the only ground stated is that it was "improper, irrelevant and immaterial testimony, and not the proper manner in which to prove handwriting." If there is any other reference in the record to letter designated as No. 5 or any further objection urged to the admission thereof we have not discovered it, and the ones mentioned are not sufficient to present the question urged by appellant in his motion for rehearing.

Appellant in his original brief and also in his motion for rehearing complains because the court permitted one C. W. Carlisle to testify relative to certain letters which are asserted in the brief and motion to have been written by one Blackie Lewis for appellant while the latter was confined in jail. The bill relative to the matter and the only one with reference to it is in its entirety as follows:

"Be it remembered that upon the trial of the above entitled and numbered cause, the Court overruled the motion of the defendant to strike from the record and to instruct the jury not to consider any testimony with reference to what Floyd Young, the defendant, claimed he had done while he was under arrest, in jail and in the custody of the sheriff, especially with reference to letters which witness C. C. Carlisle testified had been written for the defendant by one Blackie Lewis, a cell mate of the defendant while he was in jail, because the testimony as to the writing of such letters was hearsay, had not been properly identified, and were written, if written at all, or caused to be written while the defendant was a prisoner in jail and under duress, and because the writing of same, if same were written, was immaterial, irrelevant and not admissible for any purpose."

It is not claimed by the bill that any letters written by Blackie Lewis for appellant while in jail were introduced in evidence; if so the bill is incomplete for omitting the letters. As we analyze the bill, appellant was seeking to have the jury directed not to consider testimony "with reference to what appellant claimed he had done while under arrest wtih reference to letters which Carlisle testified had been written for appellant by Blackie Lewis." The bill makes it appear that appellant was making some claim relative to these letters. It is not sufficiently specific to apprise us of the direct point at issue. If appellant was making some claim about the letters he may have opened up a subject which it was entirely proper for the State to pursue. The bill fails to inform us whether the information from the witness Carlisle was elicited by the State or appellant. What an accused does or says or omits to do or say while in jail, without warning, if of a criminative character ordinarily cannot be shown by the State. Brent v. State, 89 Texas Crim. Rep., 544, 232 S. W. Rep., 845; Gardner v. State, 34 S. W. Rep., 945. (See many other cases collated under Section 64, pages 38-39, Branch's Anno. P. C.). It was not our intention by any expression used in our original opinion to change or modify the rule. We were perhaps unhappy in our choice of words, and instead of saying "we think the evidence was admissible," it would have been more appropriate to say that it is not shown by the bill in question that the matter was inadmissible. We are bound by what is shown in the bill of exception, and the same cannot be supplemented by the briefs to add to or take from it.

Believing our former opinion properly disposed of the case by an affirmance, the motion for rehearing is overruled.

*Overruled.*