## JIM MASK v. THE STATE.

### No. 585.  *Decided February 16.*

1. **Continuance—Introduction of Proof as to Before the Trial Jury.**—On a trial for theft, and after defendant's application for a continuance had been overruled, the State, over objections, was allowed to prove by the father of the absent witness that said witness was an unpardoned convict, who had left the country, etc. *Held*, that whether the evidence was admitted upon the question as to the probability of obtaining the presence of the absent witness, or as to the probable truthfulness of his testimony, if present, it is seriously doubted whether such testimony was at all admissible; but if admissible, the record of conviction was the best evidence of the fact that the absent witness was a convict. If the object was only to place before the jury the fact that defendant's witness was a convict, this could not be done, as the only office of such proof was to prejudice the jury adversely to defendant.

2. **Theft—Requested Instructions—Burden of Proof.**—On a trial for theft, it is error for the court to refuse a requested instruction, to the effect, that the burden of proof was upon the State, and did not shift to the defendant.

3. **Same—Evidence of Contemporaneous Theft—Charge Limiting Such Evidence.**—While it is admissible, on a trial for theft, to prove contemporaneous theft, yet when this has been done, it is error for the court in its charge to the jury to fail to limit the effect of such testimony to the only purposes for which it could be considered by the jury, viz., motive, intent, etc.

APPEAL from the District Court of Baylor. Tried below before Hon. W. R. McGILL.

This appeal is from a conviction for theft of one head of cattle, the property of L. F. Wilson, wherein the punishment was assessed at two years' imprisonment in the penitentiary.

Defendant made an application for continuance, which was overruled. This application was for the want of the testimony of F. Warnica and John Damrow, in which it was stated, that "the defendant expects to be able to show by said witnesses Warnica and Damrow, that about the time this defendant is charged with taking said animals these two witnesses saw said A. L. Chesher, the main prosecuting witness for the State, running an animal like the one charged to have been taken, and that the said witnesses saw him brand said animals in a brand similar to the brand run by the defendant."

A. L. Chesher, for the State, testified, that he had lived in Baylor County for the past thirteen years, and had been in the cattle business all his life until seven or eight years ago; since then he had been farming. In August, 1893, he was on the Brazos River west of the town of Seymour, and saw two cows and their calves, one brown cow with a motley-faced dunnish brown bull calf, cow branded K on left hip, left thigh, and left flank, and marked a crop and split the left and underhack the right. The other cow was red and white spotted, branded O on right hip, 66 right side, and marked under and over crop the left and under crop the right, and her calf was a reddish brindle heifer, with some white on it. He knew they belonged to L. F. Wilson by the brands and marks, and that they ranged there where he saw them, on a section of land. The calves were sucking calves, and unmarked and unbranded. He saw them there all along up to about Christmas, 1893, when he, with H. H. Fancher and Hoggard and Hancock, rounded them up. Fancher suggested that they brand the calves in the brands of their mother cows, when the witness said no; that he wanted them for bait to catch some cow thieves in the Wichita brakes. Between January 1 and 10, 1894, he took these cows and calves to the Wichita brakes, on the Wichita River, about fifteen miles distant from said section, and about three or four miles from the defendant and his brother Buck's house. He put them there to catch Buck Mask. Three days after he put them there he saw them there, and about eight days after he put them there he saw the cows there, but the calves were not with them. From the looks of their bags he thought the calves had been taken away two days before that, and began to search for the calves, and saw them in defendant's field, close to the house, each necked to another calf. They were about seventy-five yards from where he was, and might have been marked, but were not branded. About two or three weeks after that he went back there and saw the calves again. They were unnecked and branded. The dun bull was branded X on left shoulder and MASK on left side, and freshly branded. This calf was about sixty yards from him; the heifer

was about 150 yards from him, and he could not tell for certain that it had the X on the shoulder, but it looked like MASK on side. They were close to defendant's house, in his field, inclosed with a three-wire fence. There were about 640 acres in field, some in cultivation and some in pasture. All this was in Baylor County, Texas.

He also testified, that in December, 1893, he went to work for Irby and Davis, cattlemen, to brand calves and look after their interest, to keep any of their cattle from being stolen, etc. About the last of April complaints were made by Sheriff Suttlemyer against defendant for theft, and against his brother for theft; and the sheriff and witness and Craddock and Self went out and arrested them. Witness and others then looked for the calves in defendant's field and in the country all around his house, and failed to find them.

The witness admitted that he had five times been indicted for theft; four cases were dismissed, and in one case he was acquitted.

L. F. Wilson testified, that he was owner of the K brand described by witness Chesher, and owned all interest in the 66 brand described by said Chesher, and had care, management, and control of all cattle in both brands. That he did not give his consent to defendant to take any of said cattle, etc. That said marks and brands are on record in Baylor County, and have been for several years. That his ranch is partly in Baylor and partly in Archer counties, and that he had cattle running on range outside of said pasture.

The State offered the record of marks and brands, showing said brands and marks substantially as testified by witness Chesher.

H. H. Fancher testified to seeing the cows and calves west of Seymour, on the Brazos, at the time referred to by witness Chesher, and substantially agreed with Chesher as to what was said at that time.

Tony Beckle testified, that about the 1st of April, 1894, he met Lum Mask, a boy about 14 years old, and his younger brother, on the Margaret road, about ten or eleven miles from Seymour, driving two yearlings necked together. One of the yearlings was a dunnish brown bull with a motley face, and the other a red brindle heifer. He thought the bull calf was branded X on the left shoulder and MASK on left side, and the heifer branded K, but that he was not certain about the brands. He asked the boys if they were taking them to defendant's pasture, and they said no. He never saw the yearlings any more, and he never met these boys driving yearlings necked together at any other time. The boys were brothers of the defendant, and sons of the widow Mask. Lum Mask had been working for defendant, but he did not know whether he was working for him at that time or not.

P. Warnica testified, that he knew the X MASK brand of cattle, and that it belonged to defendant. Sometime in April, 1894, he heard the defendant say he owned that brand. Lum Mask, the defendant's brother, brought two yearlings to his pen, necked together. He did see him put them in the pen, but they were in the pen. They had MASK on left side and B on left jaw. "I don't know whether he left

them in the pen or put them in my herd.  One (the bull) was a brindle and the other was a heifer, and was red and white spotted.  Mrs. Mask lives about one mile from me, and the defendant about four miles from me."

H. H. Fancher, M. Davis, T. C. Irby, Joe Carr, S. Suttlemyer, and B. F. Chapman each testified, that the reputation of witness A. L. Chesher for truth and veracity was good.

With the above testimony the State rested.

Lum Mask testified, for defendant, that sometime in the spring he went to the house of Mr. Bibles, two miles north of Seymour, and got two yearlings for his brother, Buck Mask.  One was a red and the other was a motley-faced, light colored animal; one was a heifer and the other a bull.  They were branded before he left Bibles' with them, MASK on left side and B on jaw.  About ten or eleven miles from Seymour he met Tony Beckle, who asked him where he was going. He told him (Beckle) that he was going to Warnica's with the calves. This is the only time he ever met Beckle while he was driving any calves.  He necked the yearlings together before he left Bibles', and they were necked when he met Beckle.  That night he left these calves tied to defendant's field fence, and put his horse, that had given out, in his wheat field.  Next morning he took them to Warnica's and put them in his herd.  The field around defendant's house was owned by defendant and in his possession, and all the cattle in there belonged to him.

Jonathan Bibles testified, that he lived two miles north of Seymour. Sometime about the last of April he sold to Buck Mask, brother of defendant, two yearlings, one a red bull and one a light, pale-colored heifer, with ball face.  Both were fresh branded MASK on left side, and C, he thought, on left jaw; it might have been a B.  He turned them over to Lum Mask, and he necked them together and started off with them up the Margaret road, towards where his mother lived.  He never saw them any more.

The State in rebuttal offered in evidence, over the defendant's objection, the application made by defendant for a continuance, and permitted the witness P. Warnica to testify, over the defendant's objection, that Fred Warnica, the person named in the application of defendant for continuance, was his (witness') son, and that said Fred Warnica had been legally convicted of a felony and confined in the State penitentiary, and had never been pardoned; and that said Fred Warnica had, about three weeks before the time of the trial, left his home, and that he did not know where said Fred Warnica had gone; but he was informed that he had gone to the Indian Territory, with a view of permanently settling.

*Carrigan & Montomery* and *Holman & Glasgow*, for appellant.—It was error for the court to permit P. Warnica to testify that his son, Fred Warnica, one of the witnesses named in defendant's application for

continuance, was an unpardoned convict.   Because (1) said evidence was immaterial, and did not tend to prove any issue of the case; (2) said evidence was calculated and intended to prejudice the jury and inflame their minds against the defendant, by showing that he had applied for a continuance to obtain the testimony of a person who was incompetent as a witness, and who was absent from the State, the State having also offered in evidence his application for a continuance over his objection; (3) the record of conviction is the best evidence of any conviction of said F. Warnica.

On the point that the evidence was immaterial and calculated to prejudice the jury against defendant:   Shamburger v. The State, 24 Texas Crim. App., 433; Greenl. on Ev., secs. 50, 51, 51a, 52.

That the record should have been produced:   Cooper v. The State, 7 Texas Crim. App., 194; Perez v. The State, 8 Texas Crim. App., 610; Perez v. The State, 10 Crim. App., 327; Lights v. The State, 21 Texas Crim. App., 308.

Appellant submits, that the indictment alleged the theft of one head of cattle, the property of L. F. Wilson, while the proof showed that if any cattle was stolen that there were two head taken at the same time, and that if either was in the care, control, and management of L. F. Wilson, that both were; and the appellant contends, that it was the duty of the court to have compelled the State to elect for the theft of which animal a conviction would be claimed, and by appropriate instructions to limit the testimony as to the other animal to the showing of motive, intent, identity, etc., and that the failure of the court to do so constitutes fundamental and reversible error.   Coward v. The State, 24 Texas Crim. App., 590; Carter v. The State, 23 Texas Crim. App., 508;  Williamson v. The State, 30 Texas Crim. App., 330.

*Mann Trice*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Conviction for cattle theft, punishment being assessed at two years in the penitentiary.   The indictment alleges the theft of one head of cattle from L. F. Wilson.   The evidence shows, if guilty, appellant took two calves.   The two yearlings sold by Bibles to Buck Mask, and delivered to Lum Mask for Buck Mask, were not the calves in controversy upon the trial of this case, as shown by the record before us.   The criminative facts are:   (1) Some person stole a couple of calves from the possession of L. F. Wilson.   (2) These calves, shortly after being taken, were seen in defendant's field, each necked to another calf.   (3) They bore the brand of the appellant, and were not branded when taken.

When the cause was called for trial, appellant moved a continuance for two absent witnesses, namely, Damrow and Warnica, by whom he expected to prove, in substance, that Chesher, the only State's witness who incriminated appellant, himself placed the brand upon the calves and put them in appellant's field.   Application was overruled.   On

the trial, over objection by appellant, the State proved by the father of the absent witness Warnica that he was an unpardoned convict, and had left the county and gone, the father believed, to the Indian Territory.

In passing upon the probability of obtaining the absent witness, or the probable truthfulness of his evidence, if present, we have serious doubts if such evidence is admissible. If either party, as the case may be, had a record of the conviction of the witness, or was properly informed—that is, by legal evidence—that the witness was in the penitentiary, then the court would be justified in refusing the application. But here the witness is at large, may have been pardoned without the father's knowledge, or may not have been convicted of a felony. At least, there is better evidence of such facts, to wit, the record of the conviction. Had he been present, upon the objection of the State that he was incompetent to testify, the father's evidence would not have been competent to prove the incompetency of the witness. We are not passing upon the ruling of the court refusing the continuance, but allude to these matters for the purpose of presenting the objections urged to the introduction of the application for such continuance in evidence before the jury. Now, there was no admission of guilt, or any fact tending to establish guilt, set out in the application. The object of the State was not to prove a criminative fact, but only to place before the jury the fact that the witness was a convict. This could not be done. Its only office was to prejudice the jury adversely to appellant.

With reference to the action of the court in overruling the continuance, we have to say that it may not arise on another trial, and we pretermit discussion of that question. We think, however, it ought to have been granted.

The appellant requested a charge instructing the jury that the burden of the proof was upon the State, and did not shift to the defendant. This was refused. This is not only the law, but applied with peculiar force to the facts in this case.

Evidence was received to the effect that at the same time appellant had stolen two calves. No objections were urged to its admission, but if urged, should not have been sustained. But the court failed to limit the effect of this testimony. This should have been done. One of the animals was a bull and the other a heifer, and both belonged to the same man. The indictment averred the theft of one animal only.

For the errors indicated, the judgment is reversed and cause remanded.

*Reversed and remanded.*

Judges all present and concurring.