## JOE S. SOBIESKI v. THE STATE.

No. 16290. Delivered February 7, 1934.
Rehearing Denied May 30, 1934.

The opinion states the case.

*Joe Burkett* and *R. L. Burnett*, both of San Antonio, for appellant.

*Walter Tynan,* Dist. Atty., and *Bernard Ladon* and *Delos Finch,* Asst. Dist. Attys., all of San Antonio, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of conversion of public funds, and his punishment assessed at confinement in the State penitentiary for· a term of two years.

The testimony adduced shows that the appellant admitted to the County Auditor and also to the County Judge of Bexar County, Texas, that he took $8500.00 of the county's money at one time and converted same to his own use and benefit, and by other evidence it is shown that he was short with the county approximately $9500.00

By bill of exception No. 1 the appellant complains of the action of the trial court in overruling his motion to quash the indictment because the indictment was returned by a grand jury impaneled on November 7th, 1932, by the judge of the 94th District Court in and for Bexar County, Texas, at which time the October term of 1932 of said court was still in session by reason of having been extended in order to complete the trial of a certain criminal case. The appellant's contention is that the court could not legally have two terms of court open for the transaction of business at the same time in the same place; in other words, he could not begin a new term of court while the old term has not been closed or had expired by operation of law, and therefore the grand jury at the November term of said court in said county which returned the·indictment against the appellant was not a legally constituted grand· jury. Article 1923, Rev. Civ. Statutes, 1925, reads as follows: "Whenever a district court shall be in the midst of the trial of a cause when the time for the expiration of the term of said court arrives, the judge presiding shall have the power and may, if he deems it expedient, extend the term of said court until the conclusion of such pending trial. The extension of such term shall be shown in the minutes of the court before they are signed. If the term is extended as herein provided, no term of court in any other county shall fail because thereof, but the term of court therein may be opened and held as provided by law when the district judge fails to appear at the opening of a term of court."

Article 1924 of said statutes reads as follows: "A district

court in a judicial district composed of more than one county and having terms of court fixed by law in counties in which there is a city of one hundred and thirty-five thousand population, or over, according to the preceding Federal census, may, by an order of the judge thereof made and entered of record in the minutes of said court, have any of such terms of court in such last described counties extended for such length of time as such judge may deem advisable for the transaction of the business of such court."

Article 1925 of said statutes reads as folows: "If any term of court is extended as provided in the preceding article, no term of such court as fixed by law shall fail, but same shall be opened and held as provided by law. When a new term shall run concurrently in time and in the same county with an extended term, the minutes of both such terms may be recorded together during the time such terms so run concurrently. While such new term is open, each entry made in the minute records of said court, during such time shall be presumed to be the minutes of proceedings of such new term unless otherwise shown in such minutes."

That the district judge may extend a term of his court for the purpose of completing the trial of a case will not be seriously questioned; that he may extend the term of his court in a county having a city with a population of 135,000, or over, according to the preceding Federal census, for such length of time as such judge may deem advisable for the transaction of businss of such court, seems to be authorized under the statutes. Article 1925 provides that if a term of court is extended as provided in the preceding article (meaning Art. 1924), no term of such court as fixed by law shall fail but the same shall be opened and held as provided by law. When a new term shall run concurrently in time in the same county with an extended term, the minutes of both such terms may be recorded together during the time such terms so run concurrently. By said article of the statute it appears that the legislature has expressly made provision for a contingency of the kind which arose in the 94th Judicial District and which is brought before us for consideration, because Art. 1925 expressly provides "if any term of court is extended as provided in the preceding article, no term of such court as fixed by law shall fail," meaning thereby that if a term of court is extended beyond the time at which a new term of court will begin as provided by law, that the new term shall not fail but the same shall be opened and held as provided by law, and it is further provided by said article of the

statute that when a new term shall run concurrently in time and in the same county with an extended term, the minutes of both such terms may be recorded together during the time such terms run concurrently, thereby expressly conferring upon the court the power to have an old term of court and a new term of court running concurrently in time and in the same county at the same time. In the absence of an inhibition in the Constitution the statutory provision is clearly legal and the action of the trial court in having two terms of court in the same county at the same time in which there is a city of 135,000 population, or over, is clearly authorized by law. It has been held by this court in the case of Wilson v. State, 223 S. W., 217, Crausby v. State, 26 S. W. (2d) 247, and Brown v. State, 51 S. W. (2d) 616, that a judge of a judicial district composed of two or more counties may extend the term of his court in one county and at the same time open court as provided by law in another county and have both courts in both counties open at the same time for the transaction of business as provided by Art. 1923, and we see no reason why, under Art. 1924, in a county in which there is a city of 135,000 population, or over, according to the preceding Federal census, a presiding judge may not by order extend a term of the court and at the same time or during such extended term open a new term of court in the same county so that both terms of said court may have run concurrently in time and in the same county. That being true, it is our conclusion that the trial court did not err in overruling the appellant's motion to quash the indictment.

Bill of exception No. 2 is not signed or approved by the trial court and therefore can not be considered by this court.

Bill of exception No. 3 and the exhibits thereto attached embrace the same subject matter as set forth in bill of exception No. 2, and therefore in considering bill of exception No. 3 we necessarily must consider bill of exception No. 2. It appears from said bill of exception No. 3 that after the State had announced ready for trial and the court had announced for the defendant, who refused to make any announcement, that there were 35 available jurors present in the court room, and it further appears from said bill that the clerk of said court wrote the names of said jurors on two separate sheets of paper, one of which was handed to defendant and the other to the district attorney who was directed by the court to examine said jurors upon their voir dire, whereupon the defendant demanded that said jurors be drawn as provided by article 626, C. C. P., which the court at that time declined to do; that after said 35 jurors

had been examined on their voir dire by both the State and defendant, it was ascertained that ten of said number had disqualified. Thereupon six additional jurors were brought into court and defendant was required to examine them on their voir dire which examination disclosed that two of said jurors also disqualified. The court then, at the request of appellant, had the names of said 35 jurors, together with six additional jurors, drawn as provided by article 626, C. C. P., and appellant was then required to pass upon the jurors as drawn. He peremptorily challenged ten of said jurors, but the bill of exception fails to show that appellant used any of his peremptory challenges on any of the jurors who had disqualified, nor does the bill show that the court did not excuse said disqualified jurors, and in the absence of such a showing we must presume the court followed the law. Appellant asserts that he had to accept jurors that were not acceptable to him because the jurors were examined upon their voir dire before they were drawn as provided by article 626, C. C. P., instead of thereafter. Just how this method of procedure was prejudicial to him in the absence of any showing in the bill of exception that the jurors were not re-examined upon their voir dire and that those who disqualified themselves or those who were disqualified were not excused by the court does not appear from the bill. It may be inferred from the bill of exception that appellant is complaining because he learned that twelve of said jurors would disqualify or were disqualified before they were drawn as provided by article 626, C. C. P. This contention seems to us to be without merit. No prejudicial error appearing from the bill of exception, the same is overruled.

By bill of exception No. 4 appellant complains of the action of the trial court in permitting the State to introduce in evidence a copy of a certain letter dated November 3, 1932, and ·addressed to Messrs. Coleman & Co., General Agents, Union Indemnity Co., New Orleans, La., and signed and sworn to by the defendant before A. M. Vogel, Notary Public in and for Bexar County, Texas, on the 9th day of November, 1932, to which the defendant objected for the following reasons: First, because it is not signed by the defendant but signed by typewriter only; second, because it is not in the nature of a confession; third, because it purported to have been sworn to and if a confession it must be voluntary and not under oath; and, fourth, because it has not been shown that the original has been lost or destroyed or any attempt made to secure it, which objections were by the court overruled and the defendant ex-

cepted. The court in his qualification states that the defendant came to the office of Mr. Coleman in the Alamo National Bank Building to inform the Union Indemnity Co., which company was surety on his bond as county treasurer, of the fact that he had taken $8500.00 of the county's money and converted the same to his own use and benefit; that it was true that the letter was dictated by Mr. Coleman to a stenographer in the presence of the defendant and upon information furnished Mr. Coleman by the defendant; that the original letter was forwarded to the Union Indemnity Co. at New Orleans and Mr. Coleman did not know where it was. It appears from the bill of exception and also from the court's qualification to the bill that it was shown that the original letter was beyond the jurisdiction of the court and was not available and therefore the copy, which was clearly proven to be a true and correct copy of the letter forwarded to the Union Indemnity Co. at New Orleans, was admissible under the circumstances, and in support thereof we refer to the following authorities: Dawson v. State, 32 Texas Crim. Rep., 535; Thornley v. State, 36 Texas Crim. Rep., 118.

By bill of exception No. 5 appellant complains of the action of the trial court in denying him a new trial for the reason that the defendant was absent on three different occasions during the progress of the trial. It appears from the testimony in support of said motion that at one time he stepped into the judge's private room and summoned some character witnesses over the phone and requested them to appear at the courthouse to give testimony in his behalf; that the court's private room adjoined the court room in which the case was being tried and the door was open at the time so that the defendant could hear what was going on in the court room. At another time he walked to the door of the court room and stepped just outside of the doorway of the court room when a deputy sheriff requested him to return into the court room, which he did; that at another time he went to the press room for some purpose and was gone perhaps 5 minutes. It further appears from the testimony offered in support of the motion for new trial that Mr. Burkett, one of defendant's attorneys, knew of the absence of the defendant from the court room but did not call the court's attention to the same, and it is not shown that the court was cognizant of the fact that the defendant had voluntarily absented himself from the court room at any time, and it further appears that the defendant was on bond and not confined in jail or restrained of his liberty during the progress of the

trial. We do not believe that the court, after hearing the testimony in support of the motion for new trial and overruling the same, committed any error, for the reason that the defendant voluntarily absented himself for a few moments at a time apparently with the knowledge of his attorney and without the knowledge or consent of the court and the same not having been called to the attention of the court by the attorneys for the defendant so that the court would have had an opportunity to have the witnesses recalled and testify in the presence of the defendant and thereby corrected any error which may have occurred by reason of the voluntary absence of the defendant. If the rule was otherwise, when a defendant is on bond during the progress of his trial, he could deliberately absent himself from the court room for a few minutes during the progress of his trial and upon conviction force a new trial. Article 580, C. C. P., was enacted at a time when a defendant could not remain at liberty on bond during the progress of his trial, but article 582, C. C. P., makes provision for a defendant who is on bail when his trial commences to remain on bail up to the return of a verdict. This matter was fully discussed by Judge Lattimore in the case of Ballou v. State, 22 S. W. (2d) 666, and authorities there cited. See also Boatright v. State, 42 S. W. (2d) 422. We believe that under the authorities cited the trial court did not commit any error in overruling appellant's motion for a new trial.

No reversible error appearing in the record, the judgment of the trial court is in all things affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant further insists that his bills of exception numbers two and three present reversible error. A re-examination of said bills has led us to no different conclusion than expressed in our original opinion. As we understand the bills, counsel first objected to passing upon the prospective jurors until they were drawn as directed in article 626, C. C. P., and their names written in the order drawn. When the request was first made it should have been complied with, but in view of what occurred later we think the refusal was

rendered harmless. Out of the thirty-five jurors first tendered ten were found to be disqualified, and out of six additional jurors tendered two were found disqualified. Appellant was still insisting upon having the jury drawn as provided in article 626, C. C. P., and the court directed the clerk to draw the forty-one names and place them on a list in the order drawn. Appellant then objected to including in the number drawn the names of those who had been found disqualified. As the matter arose there would have been no impropriety if the court had, as requested by appellant, omitted from the drawing the names of the disqualified jurors, but the fact that their names appeared on the list as drawn could in no wise result in injury to appellant unless he was required to exercise his challenges on such disqualified jurors, and as we understand the bills they do not show he was so required to do. Appellant was entitled to a list of jurors with the names appearing thereon in the order drawn. Before finally called upon to exercise his peremptory challenges such a list was furnished him, and whether it came into his hands as the result of the first or second request seems immaterial.

We think there is no merit in appellant's complaint that the judge did not perform the manual act of drawing the jurors' names—it being insisted that such is required under the terms of article 626, C. C. P.,—but the drawing was done by the clerk under the direction of the judge. The purpose of such drawing was to furnish accused and the State alike with a list of jurors appearing thereon in the order drawn, so that no advantage might result from an arrangement otherwise brought about. The list furnished appellant was in conformity with the purpose of the statute mentioned, and in substantial compliance therewith.

The recital in said bills that after the ten peremptory challenges had been exercised by appellant there still remained two named jurors who were not acceptable to appellant presents no error. There is no showing that as to said named jurors, or to any others, the court had committed error in holding them qualified over appellant's objection. Johnson v. State, 108 Texas Crim. Rep., 499, 1 S. W. (2d) 896, and cases therein cited.

Appellant urges that we were not warranted in disposing of his complaint of admitting in evidence a carbon copy of a letter, on the theory that the original was without the jurisdiction of the court. Mr. Coleman was the agent in San Antonio of the

Union Indemnity Company of New Orleans, which company had made appellant's bond as county treasurer. When it was discovered that appellant was short in the county funds Coleman communicated the information to his company in New Orleans and an investigator for the company was sent from New Orleans to San Antonio. In the presence of Coleman and said investigator appellant signed a letter of which a carbon copy was made. As a predicate for the introduction of the carbon copy Mr. Coleman testified as follows: "I have a copy of the above mentioned letter, but I haven't the original. * * * He (appellant) signed the original. I do not know, of my own knowledge, where the original of this letter is, but my recollection is that the investigator was here for the company and he took that letter himself, but as far as I know now I have no idea where the letter is. * * * The investigator did live in New Orleans, but since the company's failure I don't know where he is." The home office of the company being in New Orleans, and the investigator having been sent by it to investigate appellant's shortage, and the original of the letter in question having been turned over to him, it occurs to us as being sufficient to justify the trial court in concluding that the letter had been taken to the home office of the company in Louisiana. The facts are not dissimilar to those found in Haire v. State, 118 Texas Crim. Rep., 16, 39 S. W. (2d) 70, where the question involved was secondary proof of the contents of an insurance policy.

Under the undisputed facts it is not thought the introduction in evidence of the carbon copy of the letter would be reversible error, even though it might have been improperly admitted. When the county auditor discovered that appellant was short the fact was reported to the county judge and the county commissioners. They called Mr. Coleman in. Appellant, in the presence of all of them, according to their evidence, admitted that he had appropriated $8500.00 of the funds belonging to the county, and had given it to a Catholic priest on a colonization proposition. Appellant did not testify, and there was no denial from any source that appellant had made the statement in question. The letter amounted to no more than appellant's written admission to the same effect.

We do not think it necessary to discuss further the question presented by bill of exception number five. The cases of Ballou v. State, 22 S. W. (2d) 666, and Boatright v. State, 42 S. W. (2d) 422, are referred to in our original opinion. There will be found cited in the opinions in those cases many authorities

which we think support our disposition of the question presented in said bill number five.

The motion for rehearing is overruled.

*Overruled.*