## HARRY LACY V. THE STATE.

No. 20031.  Delivered March 29, 1939.
Rehearing Denied June 7, 1939.
Appellant's Request for Leave to File Second Motion for Rehearing
Denied (Without Written Opinion) June 21, 1939.

The opinion states the case.

*E. R. Wright,* of Huntsville, and *Bracewell & Spiner,* of Houston, for appellant.

*W. C. McClain,* District Attorney, *Ned G. Wallace,* Assistant District Attorney, and *Roy Pitts,* all of Conroe, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

This is the second appeal in this case, the former appeal being found in 133 Texas Crim. Rep. 363, 111 S. W. (2d) 264, and for a detailed statement of facts relative hereto, we refer to the above citation. In each instance the jury returned a verdict assessing the death penalty.

Suffice it to say that appellant's defense is that he and one Bosie Beasley had been connected with a stolen hog belonging to Mr. Edgar Womack, and in order to avoid detection and punishment, Bosie Beasley ordered appellant to kill Mr. Womack, and the appellant under such duress shot and killed the deceased because he was afraid Beasley would kill him, appellant, unless appellant did kill Mr. Womack.

Appellant's first bill of exceptions complains of the fact that the court refused to instruct the court reporter to furnish appellant's attorneys with a complete statement of facts of the matters and things that transpired in the selection of the jury upon their voir dire examination.

We do not think appellant was entitled to have transcribed stenographic notes of any happening in this trial save and except the narrative statement of the facts proven thereon. Art. 760, subd. 1, C. C. P., as amended in 1931 by the 42nd Legislature, provides: "Where the defendant in a criminal case appeals, he is entitled to a statement of facts certified by the trial judge and sent up with the record; provided that said statement of facts shall be in narrative form."

Art. 760, C. C. P., subdivision 5, says: "The term 'statement of facts,' as used in this subdivision, includes only the facts adduced upon the trial upon the issue of guilt. * * *."

Subdivision 6 of Art. 760, C. C. P., reads in part as follows: "When any felony case is appealed and the defendant is not able to pay for a transcript of the testimony or give security therefor, he may make affidavit of such fact, and upon the making of such affidavit, the court shall order the official court reporter to make a narrative statement of facts and deliver it to such defendant. In all cases where the court is required to and does appoint an attorney to represent the defendant in a criminal action, such reporter shall be required to furnish the attorney for said defendant, if convicted and where an appeal is prosecuted, with a transcript of his notes. * * *."

It is noted that appellant made such an affidavit relative to his inability to pay for a transcript of the testimony adduced herein, and asked that the trial court order the court reporter to make "such statement of facts" as is provided in Subdivision 6, Art. 760. C. C. P., just above set forth. It will also be noted that the appellant employed attorneys of his own selection, and had paid them the sum of approximately $600.00, and he would not and did not come under the latter portion of the above quoted Art. 760, C. C. P. Under these facts we do not think appellant was entitled to anything more than a narrative statement of the facts adduced relative to his guilt.

Appellant's bill of exceptions No. 2 complains of the fact that upon the calling of this case for trial only thirty-two men answered present out of a venire of sixty that had been drawn for the purpose of trying this case, and that two of such thirty-two had presented urgent reasons for their being excused. That because of the threatening weather all talesmen would of necessity have to be summoned from Conroe, the county seat, and its immediate vicinity, and on account of publicity having been given to this case by newspaper publications, these talesmen would doubtless be prejudiced against this appellant, and on account of such facts appellant moved to quash the jury venire. This bill is multifarious and contains other matters than those set forth herein, but on account of the extreme penalty assessed in this case, we will consider the same.

It appears from the qualification thereto that an attachment was issued for the absent veniremen, and six were brought in; that the remainder were either sick, had moved out of the county, or were over age and claimed their exemption; that every venireman was accounted for. That out of the thirty

talesmen summoned from different parts of the county, some of the regular week's jurors were summoned and used as jurors in this case. That any juror who was shown to have a prejudice against the negro race was excused by the court, and defendant did not exercise any challenge for cause.

It seems to us that under the facts as set forth in the trial court's qualification to this bill that no error appears. We said in Hall v. State, 12 S. W. Rep. 739, 740, that the fact that not all the persons named in the venire were summoned, "even if the number summoned be less than 36, would not invalidate the special venire." See, also, Williams v. State, 132 S. W. Rep. 345; Keets v. State, 175 S. W. Rep. 149; Funk v. State, 208 S. W. Rep. 509.

Appellant's bill of exceptions No. 3 complains relative to the trial court's admission of testimony showing that soon after the killing of Mr. Womack some person unidentified at that time shot one Dude Thorne, a constable. It seems that prior to the appellant having taken the stand the State had proven this matter by a witness other than appellant, but had not shown who it was that shot Thorne. Upon the State concluding its testimony, upon motion, this portion of the testimony was by the trial court withdrawn from the jury; but upon the appellant taking the witness stand, upon cross-examination, he was questioned by the State, and, over the objection of his attorneys, he admitted that he shot Mr. Thorne. The objection of his attorneys was not to the effect that he was compelled to give testimony incriminating himself in another and further criminal matter. That such a shooting of Mr. Thorne, which the court says took place in from five to ten minutes after the fatal shooting of Mr. Womack, was proven by a further witness, Jack Marks, the testimony shows, who was introduced by the State in rebuttal. We have no doubt that such testimony was admissible as shown by Mr. Branch in his valuable work on the Penal Code, Sec. 2347, p. 1285, in which he says: "Proof of other offenses is admissible if such proof is a part of the res gestae of the alleged offense for which defendant is being tried, or if it tends to show intent when intent is an issue, or serves to prove identity when identity is an issue, or when it is sought to show the guilt of defendant by circumstantial evidence and such proof of another offense connects or tends to connect the defendant with the alleged offense for which he is being tried, or when it tends to defeat the defensive theory. Kelley v. State, 31 Texas Crim. Rep. 211, 20 S. W. 365; Dawson v. State, 32 Texas Crim. Rep. 552, 25 S. W. 21; Mixon v. State, 31 S. W. 408; Fielder v. State, 40 Texas Crim. Rep. 187, 49 S. W.

376; Camarillo v. State, 68 S. W. 795; Bright v. State, 74 S. W. 912; Perry v. State, 78 S. W. 513; Penrice v. State, 105 S. W. 797; Johnson v. State, 52 Texas Crim. Rep. 202, 107 S. W. 52; Snodgrass v. State, 148 S. W. 1095; Stephens v. State, 154 S. W. 1001; Serrato v. State, 171 S. W. 1142; Johns v. State, 174 S. W. 610; Nowlin v. State, 175 S. W. 1070; Williams v. State, 285 S. W. 616."

It occurs to us that such testimony as to the shooting of another person than Mr. Womack by appellant was a material matter affecting his defense of duress, appellant's defense being that under threats of death upon the part of Bosie Beasley, he shot and killed Mr. Womack; that he had no animus toward the deceased, but only shot him because Beasley, who was close to him at the time, told appellant to kill Mr. Womack, or he, Beasley, would kill appellant. It would also go far, in our opinion, in showing the malice that existed in appellant's heart at the time of the shooting of the deceased by evidencing that a short time thereafter, and a short distance from where he had shot Mr. Womack, he attempted to take the life of another who was possessed of the knowledge that appellant. had previously on that same afternoon been guilty of the theft of a hog, and that such attempt was not made under the duress of Bosie Beasley. It would also be so close in duration of time that it would be res gestae of the offense herein charged,—so intermixed and interblended with the main charge as to be a part of the one whole transaction. See Outlaw v. State, 69 S. W. (2d) 121, and authorities there cited. Branch's Penal Code, Sec. 83, p. 53, as to the element of time elapsing after the commission of the main offense. It will also be noted that at the time of this second shooting the appellant had begun his flight from the scene thereof, thus expediting such flight by shooting the constable who was in pursuit of him, and he remained a fugitive for a number of days.

As to the objection that the appellant was made to incriminate himself by being questioned relative to the shooting of Mr. Thorne, and would thus subject himself to a further prosecution therefor, we find the following said in Hargrove v. State, 26 S. W. Rep. 994: "Appellant further complains that the court erred in compelling him, while on the witness stand, to answer he had killed Bill Smith. The objection is that by admitting that he had killed Bill Smith he subjected himself to another prosecution for murder. Bill Smith was shot in the same conflict in which Spear was killed, and both were killed in a few moments of each other. The killing of Smith was part of the res gestae. * * * When a defendant takes the

stand he waives his constitutional protection, and subjects himself to the peril of being examined as to any and every matter pertinent to the issue, and as to all matters connected with the offense," citing authorities.

Bill of exceptions No. 4 complains of the trial court's refusal to allow the reproduction of appellant's testimony given at a former trial of this cause, and the refusal to allow the whole of such testimony to be read to the jury in this trial. It appears from the court's qualification to this bill that the district attorney used the statement of facts in the former trial hereof for the purpose of laying a predicate to impeach the appellant upon this trial, but that the appellant answered such questions in such a manner that such former testimony was not beneficial to the State, and the only use made thereof was in attempting to lay such a predicate, the statement itself nor no part thereof ever having been introduced in evidence.

We recognize the statutory rule as laid down in Art. 728, C. C. P., that when a portion of an act, declaration, conversation or writing is given in evidence by one party, the whole on the same subject may be introduced by the other party; but we do not find its application in the present instance. In the first place no part of this testimony was introduced, but only used for the purpose of an attempted impeachment. In the second place had any portion thereof been introduced, then only that portion of the testimony bearing on the introduced testimony could be introduced by appellant; otherwise he would be allowed to bolster up his own testimony, over which there was no controversy, by showing that he had testified to the same things twice, rendering such introduction subject to the self-serving rule of a witness corroborating himself. The testimony sought to be introduced being all of appellant's evidence given on the former trial, and covering seven pages of typewritten matter, the major portion of which was not referred to in such efforts to lay an impeachment predicate, and none of which was introduced by the State. This appellant had no right to have his whole testimony twice presented to this jury. We see no error in the trial court's action.

Bill of exceptions No. 5 complains of the trial court's refusal to allow appellant's attorneys to refresh the memory of a defendant's witness, Jake Daniels, by reading to said witness the testimony theretofore given by such witness at the former trial of this cause. We must confess we see but little, if any, materiality in such testimony had same been given by the witness, and in the light of the court's qualification of such

bill it seems to reflect no error. The trial court had granted two hours to appellant's attorneys in which to confer with their witnesses just prior to the placing on the stand this witness, and surely they could have withdrawn this witness, again conferred with him, and outside of the presence of the court refreshed his memory in any legitimate way, and thus achieved their purpose without delaying the progress of the trial. Trials such as this one often consume an unnecessary amount of time, and when a trial court exercises his discretion in expediting such trials in a reasonable manner, this court will not be justified in saying that the trial court abused his discretion. The conduct herein complained of was not, in our opinion, an abuse of judicial discretion.

Bill of exceptions No. 6 complains because of the fact that after it had been testified to by appellant that he had acted under duress when he killed Mr. Womack, and that Bosie Beasley had threatened to kill appellant if appellant did not kill Womack, and that he was afraid of Beasley, and that he knew Beasley was a violent and dangerous man, and that he had killed a man, and had shot other men, and that in fear of his life the appellant had killed Mr. Womack,—the appellant offered to prove by A. B. Watson and Clyde Lee that Beasley had shot each of them from ambush and without provocation, which latter facts the trial court refused to allow to be proven.

It will be noted from the statement of facts that although the witness Bosie Beasley was placed upon the stand and testified relative to appellant's plea of duress, and underwent a vigorous cross-examination, nowhere therein was he asked relative to the facts surrounding this shooting of Mr. Watson or Mr. Lee. It is also to be noted that appellant in his testimony relative to what he said he had been told by Beasley as to these acts of violence committed upon the persons of these parties, said: "I have known Bosie Beasley for about 10 or 15 years. Bosie Beasley had a reputation in the Nigton community as being a violent and dangerous man; he was a violent and dangerous man. I had heard that Bosie Beasley was a violent and dangerous man. Bosie Beasley told me himself that he had shot in a bunch of men that jumped on him and that he had killed one and wounded another. I think he said that they were passing him and that he shot into the bunch. This did not happen in Nigton, it happened up among the white settlement. And Bosie Beasley told me about several fights that he had with different ones."

It will be seen from the above quotation that what was operating on appellant's mind, and which he was rightfully en-

titled to show, was that Beasley told him "that he had shot in a bunch of men that jumped on him and that he had killed one and wounded another. I think he said that they were passing him and that he shot into the bunch. * * *". That which he was endeavoring to prove by Mr. Watson and Mr. Lee was a different matter, so we think, from that which he claimed was operating on his mind relative to Beasley at the time of the killing of Mr. Womack, and such appears in his bill: "That after said testimony had been so introduced, defendant offered the testimony of the said A. B. Watson and the said Clyde Lee to the effect that the said Bosie Beasley had in fact shot each of them from ambush without cause or provocation; * * *."

We also find that when Mr. Beasley was on the stand he was not asked anything relative to this purported statement to the appellant, although he did testify that he had been indicted for murder and for an assault to murder, and that such indictments had all been dismissed. In order to show what was operating on his mind appellant had a right to offer matters corroborative of the statement made to him by Beasley, but certainly had not the privilege of going into certain details of such transactions as were not known to him at the time of the claimed duress; but he should have been held only to such matters as were operating upon him at the time of the exercise of such claimed duress by Beasley. He had not heard that Beasley had shot these men from ambush, without provocation, and therefore should not have been allowed to have proven such. He had only heard that Beasley had shot in a bunch of men that were passing him, and such proof alone would have been permissible, but since the proffered question was coupled with other and further details, not shown to have been operating on his mind at the time of the killing, we are impressed that such bill does not present reversible error. It is also to be noted that many of the witnesses testified to the bad character of Mr. Beasley for being a violent and dangerous man, with no limitation placed thereon by the court. That he was not questioned regarding the information relative to the matters mentioned by appellant will appear from his testimony. Under the condition in which we find this bill, we do not think error is shown in the trial court refusing to allow the appellant to prove that which he desired to prove by Mr. Watson and Mr. Lee. This bill will therefore be overruled.

To the same practical effect as bill No. 6 is bill of exceptions No. 7. The qualification thereto shows that copies of the indictments against Beasley were offered before he had taken the stand and excluded, and this exception taken. After-

wards Beasley took the stand and admitted the existence of such indictments, and same were not then re-offered. We do not think error is reflected therein.

Bill of exceptions No. 8 complains of the court's failure to define in his charge to the jury the word "voluntary" as applied to this homicide.

The appellant's defense to this homicide was that of duress. That he was in close proximity to Bosie Beasley, who commanded him under a threat of death to shoot Mr. Womack, and such killing took place under this threat. That it was not the appellant's act, but that of Beasley, operating through appellant under fear of his life, that caused the homicide. The trial court gave a proper charge on the defense of duress thus offered, that if appellant killed the deceased because Bosie Beasley had threatened to shoot and kill appellant unless he did so, and that Beasley was in such close proximity to appellant as to have command and control over appellant, and place him in fear of his life, or great personal injury, and that such shooting was done under fear and compulsion, the appellant should be acquitted. It occurs to us that the court's charge on malice aforethought carries with it a charge on the voluntary character of a killing. The Crutchfield case, 10 S. W. (2d) 119, was recently said by this Court to have contained dicta in the statement offered by appellant's attorneys therein to the effect that in all murder cases the court should define the term "voluntary." See Joubert v. State, not yet reported (136 Texas Crim. Rep. 219) ; Taylor v. State, 106 S. W. (2d) 681, 682; Swilley v. State, 25 S. W. (2d) 1098, 1100.

We are also of the opinion that on account of the trial court having given a proper charge on the defense of duress, there naturally follows the assumption that such killing thereunder could not have been done voluntarily, if appellant's testimony was to be believed by the jury, and that the effect thereof was to again tell the jury that unless the killing was done by appellant's free and own voluntary act, the same would not be punishable as to him.

Bill of exceptions No. 9 complains of one of the State's attorney's remarks to the jury in that he stated to them many times in reviewing the testimony that defendant's own color testified to such quotations, and that he also stated in such remarks: "That this defendant killed two white men and then went down to old Aunt Georgie's and said that he had killed two sons-of-bitches, and that he was going to kill twenty more." The trial court qualifies this bill by saying that at no time

did such attorney argue to the jury that defendant had *killed* two white men, but did argue that the defendant had *shot* two white men, and did argue to the jury that defendant had told Aunt Georgie that he had killed two white sons-of-bitches, and was going to kill twenty more. It seems that the trial court's only ruling on an objection thereto was that the jury would remember the testimony. The appellant was a negro, and according to the testimony he had shot two white men, killing one and wounding the other. It further appears that the testimony relative to what appellant said at Aunt Georgie's house was that he had killed two sons-of-bitches, leaving out the word "white," and was going to kill twenty more, and asking her for more cartridges for his rifle. While this argument was not absolutely an accurate statement of the testimony, it would not necessarily be held to be an appeal to race prejudice, standing as it does alone, without any further remarks, and without an effort upon the part of the bill to show that same were used in any way to engender any race prejudice against the appellant for having shot two white men.

Unfortunately for appellant such facts were true, that is that he had shot two white men, and unfortunately for him, he made the ill-considered remark, leaving out the mention of the victims' color, and an inadvertent admixture of the testimony with the facts upon the part of the State's attorney, not shown to have been attempted to be used for the purpose of arousing a racial prejudice against the appellant in our opinion, is not such a serious matter as to require a reversal of this case, and we overrule this contention.

Bill of exceptions No. 10 complains of certain remarks of District Attorney Pitts, which showed, in substance, that appellant's attorney's brother, Mr. Bracewell, who was the district attorney in Trinity County, had dismissed certain indictments in a matter other than this against Bosie Beasley. It is seen from the bill that the careful trial court had refused to allow this question to be answered by Beasley while on the witness stand, and same should not have been adverted to by Attorney Pitts. However the court promptly instructed the jury not to consider such a reference by said attorney, and the error, if any, seems to us to have been cured by such instruction. We are not impressed with the duty of attaching any great weight to this passage between the two opposing counsel, and such remarks surely could not have had any influence with the jury other than to be classed as an effort at repartee between such attorneys.

Bill of exceptions No. 11 complains of the fact that appellant's challenge for cause to the juror Hie Little on account of the fact that he was a constable of Montgomery County was not sustained, appellant's attorneys contending that because he held such office he was not eligible for jury service; and that because of such court's failure to sustain such challenge, appellant was forced to exercise a permptory challenge on such objectionable venireman, and having exhausted all of his challenges, that he was finally obliged to take as the last juror one Cleve Beason, over his exception and protest. We know of no law, nor decision, that holds that a constable is not entitled to sit as a juror in a proper case, where he is not otherwise disqualified, and that the mere fact of his holding such office is a cause for his disqualification to sit as a juror in any case to be tried in the courts. Appellant furnishes us with no authority so holding. Art. 616, C. C. P. does not list such a disqualification as cause for challenge among its fourteen reasons given therefor in the formation of juries in capital cases. We said in Young v. State, 91 Texas Crim. Rep. 511, 240 S. W. Rep. 930: "That a venireman in a capital case had been a deputy sheriff and had served some process in said case, is not ipso facto ground for challenge for cause, he being otherwise qualified." Also see Edgar v. State, 59 Texas Crim. Rep. 252, 127 S. W. Rep. 1053; Mingo v. State, 61 Texas Crim Rep. 14, 133 S. W. Rep. 882,—holding to the same effect.

We also find in the record what is termed a motion to reverse for failure to obtain exception, and therein is found what purports to be bill of exceptions No. 12 relative to the tendering of a certain witness, Douglas Johnson, who was supposed to testify to a certain transaction with Beasley. The trial court refused to sign and approve such bill, giving as his reasons that the bill does not reflect the true facts; that such witness was not tendered, and that no statement was made that such witness would testify to such facts; in other words that the matters and things set forth therein did not happen. The proper method of presenting such a desired bill to this court is well known, and governed by statute,—see Art. 2237, and subdivisions, Revised Civil Statutes, and that is by a bystanders bill, and not finding such present at this time we find nothing to consider. In 4 Tex. Jur., p. 285, Sec. 198 et seq., we find the following: "Under the statutory provisions referred to in the proceeding section the appellant may procure bystanders bills of exceptions when he is dissatisfied with bills prepared by the court, where the court refuses to approve a bill presented to him, or where the defendant deems the

judge's qualification to a bill to be incorrect." In this instance the trial judge refused to approve and sign said bill because he says such did not happen, and therefore arose appellant's rights to a bystanders bill. We do find an affidavit of one J. S. Bracewell, one of appellant's attorneys, relative to the facts set forth in said bill, but such cannot be considered by us. The bystanders bill statute provides for a verification of at least three bystanders, and by such a term means "One who stands near; one who is not concerned with the business transacted." It has also been held that the appellant or his attorneys are not embraced by the definition. Moreover, an affidavit will not be considered if sworn to before appellant's attorney. See 4 Tex. Jur. p. 287, Sec. 201, and authorities cited. We see no error reflected in such proceedings.

We have carefully and patiently gone over the entire record, together with the excellently prepared briefs of both parties hereto, and acknowledge ourselves indebted to both sides for their valuable assistance herein, and on account of the extreme penalty we have given consideration to all the bills found in the record, and written thereon. Our final conclusion is that this appellant has been accorded a fair trial before a jury, and we are compelled to the conclusion that no error is shown therein. The judgment is accordingly affirmed.

### ON MOTION FOR REHEARING.

HAWKINS, Judge.

Appellant urges that we should have held the matters complained of in bills of exceptions numbers nine and ten to have presented reversible error. We have again examined the record in its entirety and the said bills particularly. The substance of the bills is set out in our original opinion, to which reference is made. In appraising objections to argument the whole record must be looked to in order to determine if the remarks complained of probably injured appellant. The State contended that appellant had been detected in the theft of a hog belonging to deceased and killed him to avoid prosecution. Appellant defended on the ground that one Beasley stole the hog and forced appellant to kill deceased in order that he (Beasley) might escape prosecution. These theories were presented to the jury under appropriate instructions. The jury accepted the evidence sustaining the State's theory. We discover nothing in the incidents complained of in the two bills which was calculated to bring about such action on the jury's part. Neither are we impressed with the idea that anything in such

incidents could have influenced the jury in arriving at the punishment. The mere facts justify the severest penalty. Appellant cites a number of cases as supporting his contention. Because of the varying facts of each case precedents are of little value in aiding us to reach a correct conclusion on complaints of arguments. In Threadgill v. State, 124 Tex. Cr. R. 287, 61 S. W. (2d) 821—citing many authorities—it is said: "In appraising the complaint of the argument of counsel, there must be considered not only the argument (unless it offends against some statutory provision), but the setting in which it appears, the evidence in the case, and the verdict of the jury."

Applying as best we are able said general rule under the facts here present we feel that the incidents complained of are not such as to call for a reversal.

Appellant insists that bill of exception number eleven reflects reversible error. Said bill recites that the trial court, over appellant's challenge for cause, held qualified a prospective juror who was a constable; that appellant used a peremptory challenge to excuse said juror; that after appellant had exhausted all of his peremptory challenges he was forced to take a juror whom the bill says appellant "undertook to challenge * * * for cause." In our original opinion the bill was disposed of on the ground that a constable was not per se disqualified as a juror. It is upon that holding our opinion is challenged. We pretermit further discussion of that feature of the bill. The present writer expresses no opinion thereon, but is impressed with the statement in Chapman v. State, 66 Tex. Cr. R. 489, 147 S. W. 580, where a deputy sheriff was held a qualified juror by the trial court, and the defendant failed to challenge peremptorily. The court said under those circumstances it was not necessary to discuss the bill, but Judge Davidson observed: "While we have held in a case or two, under some circumstances, that this character of juror might not be objectionable, or sufficiently so, at least, to cause a reversal, we are of opinion that in cases as shown by this bill of exception such jurors ought not to be summoned on a jury. There are plenty of jurors who are not engaged in the discharge of duties as officers and actively engaged in assisting the State. The juror ought to be impartial. Jurors of this sort ought not to be selected by the sheriff to sit on juries, under the circumstances here detailed."

However, if the trial court was in error in his ruling with reference to the constable being a qualified juror, the bill is not thought to reflect error in regard to the juror Beason. Al-

though the court may erroneously overrule a challenge for cause to a juror and thereby force defendant to use a peremptory challenge, and after he has exhausted all of his said challenges, he presents no error by complaining merely that he was thereafter forced to take an "objectionable" juror. The complaint must go further and show some cause for objection which would likely affect his competency or impartiality. As was said in Hudson v. State, 28 Tex. Cr. R. 323; "Without some such showing it is idle simply to say that a juror is objectionable." See Sutton v. State, 20 S. W. 564 and cases therein cited; Johnson v. State, 108 Tex. Cr. R. 499, 1 S. W. (2d) 896; Grille v. State, 20 S. W. (2d) 424; Sobieski v. State, 126 Tex. Cr. R. 405, 71 S. W. (2d) 534. Mr. Branch in his Ann. Tex. P. C., page 280, states the rule as follows: "Even if it is shown that the peremptory challenges were exhausted, the bill of exceptions is not sufficient if it merely recited therein that an objectionable juror was forced on defendant and there is a failure to show what facts made him objectionable. * * * It is not enough that the bill of exceptions recites that an objectionable juror sat on the case, but it must be shown wherein such juror was objectionable or what facts tended to prevent him from being a fair and impartial juror."

Many authorities are cited supporting the text.

All we have here is a recital in the bill that appellant "undertook" to challenge the juror Beason "for cause," there being an absence of any showing as to facts which might have made him subject to challenge for cause. To say that such a bill reflected error would amount to holding as a matter of law that such a juror was "objectionable" simply because appellant undertook to challenge for cause, when in fact there might exist no basis for such a challenge.

We regard the other matters presented in appellant's motion as having been sufficiently discussed and properly disposed of in our original opinion.

The motion for rehearing is overruled.